(No. 35663.

LILLIAN C. KNIERIM *et al.,* Appellants, *vs.* THOMAS A. IZZO *et al.,* Appellees.

*Opinion filed March 29, 1961.—Rehearing denied May 17, 1961.*

74

HUGH M. MATCHETT, JOHN P. BURITA, WILLIAM J. CALLAHAN, EDWARD L. HILTON, DAVID F. MATCHETT, JR., IRWIN PANTER, FRANK E. O'REILLY, and TOM L. YATES, all of Chicago, for appellants.

HINSHAW, CULBERTSON, MOELMANN & HOBAN, of Chicago, (OSWELL G. TREADWAY, of counsel,) for appellees Philip E. Baade *et al.,* and HALFPENNY, HAHN & RYAN, and McKINLEY & PRICE, (HAROLD T. HALFPENNY, JAMES F. FLANAGAN, MARY M. SHAW, LOUIS DENNEN, and PAUL E. PRICE, of counsel,) all of Chicago, for other appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Six cases were consolidated by the superior court of Cook County because each involved the liability of tavern operators and owners of tavern premises under sections 12 and 14 of article VI of the Liquor Control Act (Ill. Rev. Stat. 1957, chap. 43, pars. 131 and 135), and the common law. Three of the cases raise the further question of the liability of such defendants under the Wrongful Death Act. (Ill. Rev. Stat. 1957, chap. 70, pars. 1 and 2.) The trial court dismissed certain counts from each of the six complaints on the ground that they did not state a cause of action and found as to certain of them that there was no just reason for delaying enforcement or appeal. A fairly debatable constitutional question was presented by each of the six cases and was passed upon by the trial court in its judgments of dismissal.

The counts which are here for review are as follows: I, II, III, IV and VI in Knierim *et al.,* v. Izzo *et al.*; I and III in Thompson *et al.,* v. Baade *et al.;* II in Lillie *et al.,* v. McNulty *et al.*; V, VI, VII, VIII, IX, X, XI, and XII in Finley *et al.,* v. Dakin Liquors, Inc., *et al.;* II in Rogers *et al.,* v. The Tiffin Angler's Club *et al.*; III and IV in Coleman *et al.,* v. Albrecht *et al.* The substantive issues presented by these counts do not require a discussion of the allegations of fact giving rise to them. Accordingly we turn directly to a consideration of the specific legal problems presented.

An issue presented by many of the counts is whether, in addition to the remedy provided in section 14 of article VI of the Liquor Control Act, there exists one or both of the following remedies: (1) a civil action for violation of section 12 of article VI of the Liquor Control Act, which prohibits the sale, gift or delivery of alcoholic liquor "to any intoxicated person or to any person known * * * to be an habitual drunkard, spendthrift, insane, mentally ill, mentally deficient or in need of mental treatment," (2) a

common-law action against a tavern operator who supplies intoxicating liquor to a person when the supplier knows the consumer has no volition with regard to consuming the intoxicant, therefore causing his intoxication or further intoxication and resulting in injury to the consumer or a third party. This precise question, together with the same arguments as are here advanced, was presented to us in the case of *Cunningham* v. *Brown, ante,* p. 23. We pointed out in that case that the original Dram Shop Act created a remedy unknown to the common law; that the only civil remedy under the act is contained in section 14; and that we are not required by section 19 of article II of our constitution to recognize a remedy which the legislature has already created even though the statutory remedy be limited as to recoverable damages. Our holding in the *Cunningham case* that section 14 of article VI of the Liquor Control Act provides the only remedy against tavern operators and owners of tavern premises for injuries to person, property or means of support by an intoxicated person or in consequence of intoxication, is therefore dispositive of this first question.

Counts VI, VII, VIII, IX and X of the Finley complaint, counts III and IV of the Coleman complaint, count II of the Rogers complaint, and count II of the Lillie complaint were properly dismissed because each of them purported to state a cause of action against defendant tavern operators under the common law or for violating section 12 of article VI of the Liquor Control Act. Counts III and IV of the Knierim complaint were properly dismissed as to the defendant tavern operators for the same reason. Count III of the Thompson complaint is based in part on section 14 of article VI of the Liquor Control Act, and in part on a purported common-law liability of the defendant tavern operators. The count totally disregards the provisions of section 33 of the Civil Practice Act, (Ill. Rev. Stat. 1957, chap. 110, par. 33,) and defendants' objection

that it consists "of a multiplicity of allegations which are unrelated and which place an impossible burden on these defendants as far as answering" is well taken. It was also properly dismissed.

The next question is whether an action can be maintained under the Wrongful Death Act against tavern operators and owners of tavern premises for death caused by an intoxicated person or in consequence of intoxication. It should be noted that the Wrongful Death Act is not a survival statute, (*Holton* v. *Daly,* 106 Ill. 131,) as plaintiffs seem to believe. The action created by that act is a new one for the pecuniary loss which the widow and next of kin may have sustained by reason of the death of the injured person. (*Nudd* v. *Matsoukas,* 7 Ill.2d 608.) Thus, the mere fact that the decedent may have been able to maintain an action under the Liquor Control Act, if he had lived, does not give his administrator such an action.

Although both the Wrongful Death Act and the Liquor Control Act provide that an administrator may maintain an action, the persons entitled to recovery, the measure of damages, the bases of liability and the maximum recovery are not the same under the two acts. The persons entitled to recovery under the Wrongful Death Act are the widow and next of kin (*Nudd* v. *Matsoukas,* 7 Ill.2d 608); the measure of damages is the pecuniary loss suffered by such beneficiaries, (Ill. Rev. Stat. 1957, chap. 70, par. 2,) and when the kinsman are lineal a presumption of pecuniary loss obtains, from the relationship alone, sufficient to sustain a verdict and judgment awarding substantial damages, without proof of actual loss (*Wilcox* v. *Bierd,* 330 Ill. 571); the action is based on the wrongful act of the defendant (*Clarke* v. *Storchak,* 384 Ill. 564); and the maximum recovery for the class of beneficiaries is $30,000. (Ill. Rev. Stat. 1957, chap. 70, par. 2.) Under the Liquor Control Act persons who were in fact receiving support from the decedent are entitled to recovery. Thus, although a sister

may not be the next of kin she may recover for her loss of support (*Nagle* v. *Keller,* 237 Ill. 431), and a parent who is the next of kin may be denied recovery when he has lost no support. (*Howlett* v. *Doglio,* 402 Ill. 311.) The presumption of loss existing under the Wrongful Death Act when the beneficiaries are lineal kinsmen does not exist under the Liquor Control Act (*Howlett* v. *Doglio,* 402 Ill. 311); the defendant's liability is not based on fault (*Osborn* v. *Leuffgen,* 381 Ill. 295); and the maximum recovery for the class of beneficiaries is $20,000. (Ill. Rev. Stat. 1957, chap. 43, par. 135.) Because of these and other distinctions between the two acts we have held that the two acts are separate and distinct and that the nature and amount of damages provided for in the Liquor Control Act are not to be limited (*O'Connor* v. *Rathje,* 368 Ill. 83) or expanded (*Howlett* v. *Doglio,* 402 Ill. 311) by the provisions of the Wrongful Death Act.

The Liquor Control Act creates a right of action in the personal representative of the deceased for the exclusive benefit of the person or persons injured in their means of support and limits the amount recoverable in such an action to $20,000. A comparison of the two acts reveals that the General Assembly did not contemplate that the Wrongful Death Act should supplant or supplement the remedy it carefully created and limited. We hold therefore that the Liquor Control Act provides the only remedy against tavern operators and owners of tavern premises for any death caused by an intoxicated person or in consequence of intoxication.

Count I of the Thompson complaint and count XII of the Finley complaint were properly dismissed because each of them purported to state a cause of action against defendant tavern operators under the Wrongful Death Act. Counts I and II of the Knierim complaint were properly dismissed as to the defendant tavern operators for the same reason.

The substantive issue raised by count VI of the Knierim complaint is whether mental disturbance not resulting in any physical injury or disability constitutes an injury to person within the meaning of section 14 of article VI of the Liquor Control Act. This court at an early date held that mental anguish, disgrace, and loss of society do not constitute an injury to person within the meaning of the act. (*Albrecht* v. *Walker*, 73 Ill. 69; *Freese* v. *Tripp*, 70 Ill. 496), and this appears to be the rule in other States with similar statutes. (Annot., 6 A.L.R.2d 798.) If we were to hold that mental disturbance now constitutes an injury to person, we would be doing what the legislature has not seen fit to do in the numerous amendments to the act since 1874 when the *Freese* decision was rendered. This court cannot, under the guise of statutory construction, enlarge the classification of actionable injuries under the act. (*Howlett* v. *Doglio*, 402 Ill. 311.) The count in question was properly dismissed.

The question raised by count XI of the Finley complaint is whether a widow can maintain an action for damage to her property under the Liquor Control Act because she has depleted her own funds to support herself and her daughter during a period when her husband was habitually intoxicated and did not provide support for them. The widow in this situation may have been damaged in property but the cause of her damage is the absence of support by her husband. Her cause of action, if any, is for injury to means of support. The count must be treated therefore as an action for loss of support and not as damage to property. So regarded, the cause of action attempted to be stated in count XI is no more than a repetition of that stated in count II of the same complaint, which is still pending in the trial court.

Several other questions regarding the liability of tavern operators and owners of tavern premises under section 14 of article VI of the Liquor Control Act are raised in plain-

tiffs' brief, but we deem it unnecessary to discuss them in view of the fact that each of the counts was properly dismissed as to such defendants for the reasons just given and a discussion of the other questions would make this opinion unduly long. There remains, however, the question of whether counts I, II, III and IV of the Knierim complaint were properly dismissed as to defendant Izzo.

The Knierim complaint alleges that Izzo while intoxicated, murdered the plaintiff's husband. In counts I and II, which were brought under the Wrongful Death Act, he is named as a defendant together with certain tavern operators. We are of the opinion that a cause of action is stated as against Izzo in these counts and the trial court erred in dismissing the counts as to him.

In counts III and IV Izzo is again named as a party defendant together with certain tavern operators. The two counts, as far as Izzo is concerned, are identical. Damages are sought under each count for loss of consortium and great mental anguish. We turn first to the question of whether a widow can maintain an action for her loss of consortium against a defendant who wrongfully caused the death of her husband.

In *Dini* v. *Naiditch,* 20 Ill.2d 406, this court held that the complaint of a wife seeking damages for the loss of consortium of her husband due to the injuries he sustained as a result of a defendant's negligence, properly sets forth a basis of liability which the law will recognize. The holding was premised on a recognition that the conjugal interest of the wife is entitled to protection and that, except as to loss of support, damages to the conjugal interest by negligent injury to the husband would not be recovered in an action by the husband. The basic reason for granting such relief, therefore, was the protection of the husband-wife relationship (20 Ill.2d 406, 430), which the husband's action for personal injuries does not afford.

The basic reason expressed in the *Dini case* is lacking,

however, when an action can be maintained under the Wrongful Death Act. An action under the act is not a survival of the action the decedent would have had for his injuries (*Holton* v. *Daly*, 106 Ill. 131), but is a new cause of action for the pecuniary loss which the widow and next of kin may have sustained by reason of the death of the injured person. (*Nudd* v. *Matsoukas*, 7 Ill.2d 608.) If the act provided for a survival of the action the decedent would have had for his injuries, the situation would be like that presented in the *Dini case*. However, the new cause of action provided by the act affords protection to the family unit particularly when the beneficial plaintiffs are the widow and lineal kinsmen. Indeed, when they are the beneficial plaintiffs, a presumption of pecuniary loss obtains, from the relationship alone, sufficient to sustain a verdict and judgment awarding substantial damages, without proof of actual loss. *Wilcox* v. *Bierd*, 330 Ill. 571; *Dukeman* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 237 Ill. 104; *Grace & Hyde Co.* v. *Strong*, 224 Ill. 630.

In *Hall* v. *Gillins*, 13 Ill.2d 26, a widow and minor child by his next friend sought to maintain an action under the common law for deprivation of support, companionship, guidance, advice, love and affection of the deceased husband-father. We there pointed out (p. 31) : "The gap between the 'damages for destruction of the family unit' that plaintiffs claim. and the 'just compensation with reference to the pecuniary injuries resulting from such death' that the statute allows, is not so wide as the words used would suggest. The term 'pecuniary injuries' has received an interpretation that is broad enough to include most of the items of damage that are claimed by the plaintiffs in this case." We concluded that the differences between the common-law death action sought to be maintained and the action that is available under the Wrongful Death Act were not sufficiently significant to warrant recognition of a new remedy.

We hold that the differences between an action for

loss of consortium resulting from the death of a husband and an action for pecuniary loss under the Wrongful Death Act are not sufficiently significant to warrant us recognizing the action for loss of consortium as an additional remedy available to the widow.

This leads us to the question of whether a widow can maintain an action against the murderer of her husband for "great mental anguish" and "nervous exhaustion" that resulted from the defendant's threat to her that he would kill her husband and the fulfillment of the threat. It is not alleged that the mental disturbance and nervous exhaustion has caused any physical injury or disability but appears to be an oppressive and undesirable disturbance of her mental tranquility.

Our attention has been directed to the fact that in 1947 section 46 of the Restatement of Torts, (Restatement of the Law, 1948 Supp., Torts, § 46,) was amended to recognize the intentional causing of severe emotional distress as a separate tort, and approve recovery for the emotional distress itself, as well as bodily harm resulting from it. We are asked to recognize this action which has been described as a "new tort." See Prosser, Intentional Infliction of Mental Suffering: A New Tort, 37 Mich. L. Rev. 874.

It is a basic concept in the law that one who intentionally harms another without excuse is liable for the harm. (See *Aikens* v. *State of Wisconsin,* 195 U.S. 194, 49 L. ed. 154.) This concept has not, however, until recently, been applied in cases where the harm caused to an individual was mental suffering. (See Seavey, Torts, Annual Survey of American Law, (1958,) 489; 52 Am. Jur., Torts, sec. 45 and cases cited; Annot. 15 A.L.R.2d 108.) The various reasons advanced for the reluctance to redress mental disturbance have received critical analysis and been rejected by many writers, (see *e.g.,* Goodrich, Emotional Disturbance as Legal Damage, 20 Mich. L. Rev. 497; Magruder, Mental and Emotional Disturbance in the Law of Torts, 49

Harv. L. Rev. 1033; Wade, Tort Liability for Abusive and Insulting Language, 4 Vand. L. Rev. 63,) and an increasing number of courts now recognize the intentional infliction of severe emotional distress as a separate tort. (See *Savage v. Boies*, 77 Ariz. 355, 272 P.2d 349; *Wilson v. Wilkins*, 181 Ark. 137, 25 S.W.2d 428; *State Rubbish Collector Ass'n v. Siliznoff*, 38 Cal.2d 330, 240 P.2d 282; *Curnett v. Wolf*, 244 Iowa 683, 57 N.W.2d 915; *LaSalle Extension University v. Fogarty*, 126 Neb. 457, 253 N.W. 424; *Mitran v. Williamson*, 197 N.Y.S.2d 689.) In view of the many conflicting precedents, it is not feasible to review the cases individually, and we will only evaluate the reasons given in support of recognition or denial of the action.

One of the principal grounds given for denial is that mental disturbance cannot be measured in terms of money. (See *Lynch v. Knight*, 11 Eng. Reprint 854; *Mitchell v. Rochester Railway Co.* 151 N.Y. 107, 45 N.E. 354.) It is equally difficult, however, to compute the money value of pain and suffering for which damages are allowed by juries each day in personal injury actions, and mental suffering has been recognized in this State as an element of compensable damage in actions for defamation (*Adams v. Smith*, 58 Ill. 417; *Cook v. East Shore Newspapers, Inc.* 327 Ill. App. 559), for malicious prosecution in aggravated cases (*Merriman v. Merriman*, 290 Ill. App. 139), and for assault. (*Johnson v. Lamm*, 156 Ill. App. 287.) The fact that damages are allowed for mental suffering in other tort actions does not prove that any scientific standard for measuring such damages exists, but it does detract from the cogency of the argument for denying the action.

Another reason frequently advanced in denying the right of action is that mental consequences are too evanescent, intangible and peculiar for the law to deal with them. (*Braun v. Craven*, 175 Ill. 401; *Mitchell v. Rochester Railway Co.* 151 N.Y. 107.) The Georgia court on one occasion stated: "The law leaves feeling to be helped and vindicated

by the tremendous force of sympathy. * * * The civil law is a practical business system dealing with what is tangible, and does not undertake to redress psychological injuries." (*Chapman* v. *Telegraph Co.* 88 Ga. 763, 772, 15 S.E. 901.) In the past thirty years, however, psychosomatic medicine has supplied us with many facts about the nature of man's emotions and its bodily effects, (See Smith, Relation of Emotions to Injury and Disease, Legal Liability for Psychic Stimuli, 30 Va. L. Rev. (1944) 193,) and this argument is losing its effectiveness.

It has also been said that the allowance of such an action would open the door to fictitious claims. (*Braun* v. *Craven,* 175 Ill. 401; *Mitchell* v. *Rochester Railway Co.* 151 N.Y. 107; *Spade* v. *Lynn & Boston Railroad Co.* 168 Mass. 285, 43 N.E. 88.) It has not been suggested that every emotional upset should constitute the basis of an action. Indiscriminate allowance of actions for mental anguish would encourage neurotic overreactions to trivial hurts, and the law should aim to toughen the psyche of the citizen rather than pamper it. But a line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility.

The stronger emotions when sufficiently aroused do produce symptoms that are visible to the professional eye and we can expect much more help from the men of science in the future. (See Goodrich, Emotional Disturbance as Legal Damage, 20 Mich. L. Rev. 497.) In addition, jurors from their own experience will be able to determine whether outrageous conduct results in severe emotional disturbance.

Another barrier to allowance of such an action has been the recognition that mental consequences vary greatly with the individual. (*Braun* v. *Craven,* 175 Ill. 401; *Mitchell* v. *Rochester Railway Co.* 151 N.Y. 107; *Chittick* v. *Philadelphia Rapid Transit Co.* 224 Pa. 13, 73 Atl. 4.) Again, it has not been suggested that all words or conduct intended

to cause emotional disturbance will constitute the basis of the action merely because severe emotional distress or consequent bodily injury has resulted.

The conduct in the recent case of *Slocum* v. *Food Fair Stores of Florida, Inc.* 100 So.2d 396, sharply contrasts with that involved in this case and illustrates the point. There a customer in defendant's store inquired of an employee as to the price of an item. He replied: "If you want to know the price, you'll have to find out the best way you can * * * you stink to me." Thereafter plaintiff brought an action for mental suffering and an ensuing heart attack and aggravation of pre-existing heart disease, allegedly caused by the insulting language. On appeal the order dismissing the complaint was affirmed on the ground that the employee's conduct was not actionable although it was intentional and allegedly caused bodily injury.

In commenting on this aspect of the case the Florida court made what we believe is a fair statement of the standard of conduct to be applied in such an action. " * * * it is uniformly agreed that the determination of whether words or conduct are actionable in character is to be made on an objective rather than subjective standard, from common acceptation. The unwarranted intrusion must be calculated to cause 'severe emotional distress' to a person of ordinary sensibilities, in the absence of special knowledge or notice. There is no inclination to include all instances of mere vulgarities, obviously intended as meaningless abusive expressions."

The "reasonable man" seems to be well known to jurors and we expect that they will also be acquainted with the "man of ordinary sensibilities." Whether the aggressive invasion of mental equanimity is unwarranted or unprovoked, whether it is calculated to cause severe emotional disturbance in the person of ordinary sensibilities, and whether there was special knowledge or notice are all questions that will depend on the particular facts of each case.

We are confident, however, that the trial judges in this State will not permit litigation to enter the field of trivialities and mere bad manners.

Consequently, we must agree with those jurists and critics who find that the reasons advanced in the cases for denying an action for the intentional infliction of severe emotional distress have for the most part been added to support a predetermined conclusion dictated by history and the fear of extending liability. (Prosser, Torts 2d ed., sec. 176; 20 Mich. L. Rev. 497; 49 Harv. L. Rev. 1033; *State Rubbish Collector Ass'n* v. *Siliznoff,* 38 Cal.2d 330, 240 P.2d 282; *Curnett* v. *Wolf,* 244 Iowa 683, 57 N.W.2d 915; *Mitran* v. *Williamson,* 197 N.Y.S.2d 689). Messrs. Warren and Brandeis, in their now famous article, The Right to Privacy, 4 Harv. L. Rev. 193, candidly illustrate the vast strides the common law has made since the days when it gave a remedy only for physical interference with life and property, for trespasses *vi et armis.* They point out that the intense intellectual and emotional life which has come with the advance of civilization has made it clear that only a part of the pain, pleasure, and profit of life lies in physical things.

We conclude that peace of mind is an interest of sufficient importance to receive protection from the law against intentional invasion of the kind here involved. We hold therefore that the allegations that defendant intentionally caused severe emotional disturbance and nervous exhaustion by his threat to murder plaintiff's husband and the fulfillment of the threat states a cause of action.

There remains the question of whether a request for punitive damages in such an action is proper. Whether punitive damages may be assessed in a particular case is properly a question of law. (*Smith* v. *Hill,* 12 Ill.2d 588.) Generally such damages may be recovered in cases where the wrongful act complained of is characterized by wantonness, malice, oppression or circumstances of aggravation. (*Eshelman* v. *Rawalt,* 298 Ill. 192.) The alleged conduct

of the defendant in intentionally causing the severe emotional disturbance is characterized by these elements. Indeed it is the outrageous nature of his conduct that forms the basis for the action.

We believe, nevertheless, that punitive damages cannot be sanctioned as an additional recovery in such an action. Since the outrageous quality of the defendant's conduct forms the basis of the action, the rendition of compensatory damages will be sufficiently punitive.

We hold that as to Izzo the trial court should have stricken only those portions of counts III and IV that related to loss of consortium and punitive damages and that it erred in dismissing the counts as to him.

For the reasons hereinbefore given that portion of the judgment dismissing counts I, II, III and IV of the Knierim complaint as to Izzo is reversed and the cause as to him is remanded; in all other respects the judgments of the superior court of Cook County are affirmed.

*Affirmed in part, and*
*reversed and remanded in part.*