LUCILLE LEWIS, Plaintiff-Appellant, v. WESTINGHOUSE ELECTRIC CORPORATION, Defendant-Appellee.

First District (4th Division)   Nos. 84—2310, 85—196 cons.

Opinion filed December 26, 1985.

LINN, J., dissenting.

Heller & Morris & Associates, Ltd., of Chicago (James A. Payonk, Jr., of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Patricia J. Prange, of counsel), for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

In the third count of a three-count amended complaint the plaintiff, Lucille Lewis, sought damages from the defendants, Westinghouse Elevator Co., a division of Westinghouse Electric Corporation and the Chicago Housing Authority (CHA) for the negligent infliction of emotional distress. The defendants moved to dismiss the plaintiff's complaint for failure to state a cause of action. The trial court granted the motion to dismiss. The plaintiff now appeals the dismissal of the complaint.

The plaintiff is a resident at one of the apartments owned by the defendant CHA. The defendant Westinghouse maintains and services the elevators at the CHA building. On August 16, 1983, the plaintiff entered the elevator on the first floor and rode it to the 16th floor. As she attempted to exit the elevator, however, the elevator stalled and the doors remained closed. The elevator remained in this position for approximately 40 minutes. The plaintiff alleges that during that time she was in danger of "suffocation and serious physical harm." In addition, plaintiff alleges that as a result of the incident she suffered an unstable angina and aggravation of her coronary arteriosclerotic heart disease and hypertension.

The central issue to be resolved on appeal is whether the plaintiff has stated a cause of action for the negligent infliction of emotional distress under *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1. In *Rickey*, the plaintiff, age eight, sought damages for the emotional distress he suffered as a result of watching his five-year-old brother's near strangulation by an article of clothing which

became entangled in a CTA escalator. In determining whether the plaintiff could recover, the court adopted the zone of physical danger standard. In order to state a cause of action under that standard the plaintiff must have been in "such proximity to the accident" that there was "a high risk of physical impact" so as to cause the plaintiff "reasonable fear for his own safety." Additionally, the plaintiff "must show a physical injury or illness as a result of the emotional distress." (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 555, 457 N.E.2d 1, 5.) In adopting this standard, the court abandoned the "impact rule," which requires that in order to state a cause of action for the negligent infliction of emotional distress, the plaintiff must have suffered some contemporaneous impact.

██ █ For at least two reasons we do not believe the plaintiff has stated a cause of action. First, we find that the plaintiff did not have a reasonable fear for her own safety. Whether a fear is reasonable is determined by the objective standard of whether a particular incident would produce fear in the person of ordinary sensibilities. (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 86, 174 N.E.2d 157, 165.) In this case, the elevator merely stalled and the doors failed to open. This is not a case such as *Bass v. Nooney Co.* (Mo. 1983), 646 S.W.2d 765, where water began to rise in the elevator so that the party reasonably feared drowning. Apprehensive or uncomfortable it may have been for the plaintiff, but, absent something more, the incident in this case was not one which produces fear of suffocation.

Secondly, we find that for the same reasons stated above, the plaintiff was not in a high risk of physical impact. The elevator merely stalled. There is no suggestion in this case that any outside force was present that would injure the plaintiff. In our estimation, the facts here cannot lead to the conclusion that there was a high risk to the plaintiff of physical impact.

██ In making these judgments concerning high risk of physical impact and reasonable fear, we believe that this is a question of law and not a question of fact. We recognize nevertheless that the line between those questions is hazy at best. The determination is usually made on a common sense or intuitive basis. (See *Consolino v. Thompson* (1984), 127 Ill. App. 3d 31, 468 N.E.2d 422.) Moreover, in making that judgment, we are mindful of the admonition of the Illinois Supreme Court in a case involving an intentional infliction of emotional distress, *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157. In *Knierim*, the court stated that "[i]ndiscriminate allowance of actions for mental anguish would encourage neurotic overreactions to trivial hurts, and the law should aim to toughen the psyche of the citizen

rather than pamper it." *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 85, 174 N.E.2d 157, 164.

One of the fears expressed by courts in abandoning the impact rule has been the potential flood of litigation that could result. (See *Rickey v. Chicago Transit Authority* (1981), 101 Ill. App. 3d 439, 441, 428 N.E.2d 596, 598, *aff'd* (1983), 98 Ill. 2d 546, 457 N.E.2d 1.) While that flood has apparently not appeared where the impact rule has been abandoned, trial courts must monitor such litigation, as the trial court did here, to limit such claims to those that closely follow the rule enunciated in *Rickey*. Similarly, we believe that the determination of whether a fear is reasonable, whether there was a high risk of impact, and whether an injury or illness resulted must be made at the pleading stages of the litigation. This comports with the supreme court's statement in *Knierim* that "[w]e are confident, *** that the trial judges in this State will not permit litigation to enter the field of trivialities and mere bad manners." *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 87, 174 N.E.2d 157, 165.

It might be argued that this is not a neurotic overreaction to a trivial hurt since the plaintiff has alleged a resulting physical injury, aggravation of her angina condition. However, the *Knierim* court favorably commented on the case of *Slocum v. Food Fair Stores of Florida, Inc.* (Fla. 1958), 100 So. 2d 396, in which the plaintiff suffered a heart attack as a result of an aggravation of a preexisting condition. The Florida court found that there was no cause of action because the defendant's conduct must cause distress to a person of "ordinary sensibilities." The finding of the Florida court, in which the Illinois Supreme Court agreed, was that this was not a person of ordinary sensibilities. We judge that to be the situation in this instance.

■ An additional argument raised by the defendants is that recovery under *Rickey* is limited to "bystanders" to the exclusion of "direct victims." The defendants suggest that the plaintiff Lewis cannot recover because she did not witness an injury to a third person. We do not believe that the supreme court in *Rickey* intended its decision to be read in such a manner. First, although *Rickey* involved a bystander situation, the court noted that "[t]he underlying question is, of course, whether any person who suffers emotional distress can recover ***." (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 553, 457 N.E.2d 1, 4.) Second, in adopting the zone of physical danger standard the court cited comment c to section 436A of the Restatement (Second) of Torts. Neither section 436A nor comment c and the illustration contained therein are limited to bystander recovery.

It must be recognized that under the zone of physical danger

standard there is no longer the need to distinguish between whether the plaintiff is a direct victim or a bystander. The proper focus is on whether the plaintiff was in proximity to the danger. One within the zone of physical danger can recover regardless of whether or not they witnessed an accident to a third person.

For the reasons stated above, we believe the plaintiff has not satisfied the elements necessary to state a cause of action for negligent infliction of emotional distress. The order of the trial court is affirmed.

Affirmed.

McMORROW, J., concurs.

JUSTICE LINN, dissenting:

I respectfully dissent. I believe Lewis' complaint alleges a cause of action in negligent infliction of emotional distress and, therefore, she should be permitted to present her case to a jury.

It has long been the law in Illinois that in reviewing a motion to dismiss, pleadings are to be liberally construed with the goal of providing substantial justice between the parties. (*Hayna v. Arby's Inc.* (1981), 99 Ill. App. 3d 700, 425 N.E.2d 1174; *Sharps v. Stein* (1980), 90 Ill. App. 3d 435, 413 N.E.2d 75.) A motion to dismiss admits all facts well pleaded and all reasonable inferences therefrom should be construed in the plaintiff's favor. (*Cook v. Askew* (1975), 34 Ill. App. 3d 1055, 341 N.E.2d 13.) Moreover, a cause of action should not be dismissed unless it clearly appears that no set of facts can be proved which would entitle the plaintiff to relief. (*McCauley v. Chicago Board of Education* (1978), 66 Ill. App. 3d 676, 384 N.E.2d 100.) In addition, a complaint should not be dismissed if the facts essential to the plaintiff's claim appear by reasonable implication. *Central States Southeast & Southwest Areas Pension Fund v. Gaylur Products, Inc.* (1978), 66 Ill. App. 3d 709, 384 N.E.2d 123.

Tested against these standards, Lewis' complaint is legally sufficient under Illinois law.

The majority asserts two reasons why Lewis' complaint was properly dismissed: (1) Lewis was not subjected to "a high risk of physical impact" during her confinement in the elevator; and (2) a person of "ordinary sensibilities" would not fear suffocation if that person became, as did Lewis, trapped in a malfunctioning elevator. I find both of these arguments to be seriously flawed.

First, the majority has misread the supreme court's opinion in

*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1. According to the majority, *Rickey* requires a direct victim, such as Lewis, to allege that she was "in a high risk of physical impact" in order to properly state a cause of action in negligent infliction of emotional distress. The majority, however, is confused for they have failed to acknowledge the distinction between a direct victim and a bystander. This distinction is critical because a reading of the *Rickey* opinion discloses that being in a "high risk of physical impact" is a requirement imposed upon a bystander and *not* upon a direct victim such as Lewis. In this regard, the *Rickey* opinion states:

> "This rule [the zone of danger rule] does not require that the *bystander* suffer a physical impact or injury at the time of the negligent act, but it does require that he [the bystander] must have been in such proximity to the accident in which the *direct victim* was physically injured that there was a high risk to him[, the bystander,] of physical impact." (Emphasis added.) (98 Ill. 2d 546, 555.)

As the rule set forth above demonstrates, the supreme court was aware that there are often two different classes of persons injured as the result of an accident: those who are direct victims of the accident, and those who are bystanders to the accident. Before demonstrating why it is the bystander and not the direct victim who must be in a risk of physical impact, however, it is first necessary to define the two classes of plaintiffs.

The direct victim is the individual who is harmed as an immediate consequence of the accident itself; he is the person who sustains an injury as a result of being personally involved in the mishap. The direct victim, for example, is the driver of the car involved in a collision; the pedestrian hit by a passing vehicle; the product user in whose hands the product explodes, or, as in the present case, the person trapped inside the malfunctioning elevator. The direct victim, in other words, is an actual participant in the accident itself.

The bystander, on the other hand, is an observer of the accident which produces the direct victim's injury. The bystander does not suffer an injury as a result of being involved in the accident itself. Instead, the injury which the bystander suffers is that which he incurs by observing the accident and the manner in which the accident produces an injury to the direct victim. The bystander, in other words, is a witness to, rather than a participant in, the injury-causing accident.

The distinction between a direct victim and a bystander is more than just a play on semantics; it is vitally important to understanding why the majority's opinion, in the present case, is wrong. In *Rickey,*

the supreme court created a cut-off point beyond which a defendant owes no duty, and beyond which, therefore, the defendant is no longer liable for any injuries inflicted. The supreme court did not adopt a completely expansive view of a defendant's duty in negligent infliction of emotional distress cases (see *Dillon v. Legg* (1968), 68 Cal. 2d 728, 441 P.2d 912, 69 Cal. Rptr. 72, wherein the court adopted a foreseeability standard); instead, the court ruled that a defendant owes a duty to only those persons who suffer emotional distress (and accompanying physical manifestations) as a result of being within the "zone of danger" created by a negligently caused accident. This zone of danger, because it is created by the accident, encircles it; hence, the accident is, in effect, the "nucleus" of the surrounding zone of danger. A person is within an accident's zone of danger (and able to seek recovery under *Rickey*) when he is sufficiently close to that accident such that he is subjected to a high risk of physical impact emanating *from the accident itself*. In other words, the concept of being subjected to "a high risk of physical impact" was enunciated by the *Rickey* court for the purpose of determining at what point the zone of danger, and therefore the defendant's liability, is cut off. If a person, because of location or circumstance, is not threatened with a high risk of physical impact emanating from the accident itself, then he is outside the accident's zone of danger and the defendant is not liable for any injury he suffers. In this regard, the "high risk of physical impact" standard defines the perimeter of the zone of danger within which the plaintiff must be in order to seek recovery under *Rickey*.

Thus, it is evident, from the foregoing analysis, that the accident is, and must be, the starting point in determining whether someone is within the zone of danger. Again, according to *Rickey*, someone within the accident's zone of danger can recover, someone outside it cannot. Consequently, if the plaintiff is, himself, involved in the very accident which forms the nucleus of the surrounding zone of danger, then, by definition, that plaintiff must satisfy the supreme court's requirement of being "within the zone of danger." A direct victim such as Lewis is not required to allege that she was subjected to a high risk of physical impact because she was involved in the very accident producing that risk. This is not a case in which Lewis was a bystander to the elevator door accident. To the contrary, Lewis' injury was an immediate result of the elevator's malfunction; in other words, Lewis was a participant rather than an observer.

The majority's confusion regarding whether Lewis was a direct victim or a bystander is best demonstrated by applying the facts of the present case to the majority's own interpretation of the zone of

danger rule. In attempting to clarify the law with regard to the zone of danger rule, the majority states:

"The proper focus is on whether the plaintiff was in proximity to the danger. *One within the zone of danger can recover* regardless of whether or not they witnessed an accident to a third person." (Emphasis added.)

As the statement above demonstrates, it is the majority's position that the key inquiry, in a negligent infliction of emotional distress case, is the plaintiff's "proximity" to the accident. If the plaintiff is sufficiently close to the accident such that she is within the zone of danger, that plaintiff, according to the majority, can seek recovery.

Applying those principles to the instant case, it is clear that Lewis, while trapped in the elevator, was in close proximity to the danger created by the malfunctioning elevator doors. The locked elevator doors created a zone of danger that included, at the very least, the interior of the elevator car itself. Indeed, Lewis was locked within the danger itself; namely, the malfunctioning elevator. That being the case, unless the majority claims that the malfunctioning elevator doors created no danger, which the majority has not, then Lewis must, based on her proximity to the danger, constitute "one within the zone of danger" and therefore she "can recover."

Moreover, in reaching its decision, the majority has neglected a significant portion of Lewis' complaint. In this regard, the majority's opinion states: "Apprehensive or uncomfortable it may have been for the plaintiff, but, absent something more, the incident in this case was not one which produces fear of suffocation." Fear of suffocation, however, is only one-half of the danger which Lewis alleges she was subjected to when the elevator doors malfunctioned. In her complaint, Lewis alleges: "*** plaintiff became trapped in said elevator *** and was thereby in danger of suffocation and *serious physical harm*." Nowhere in the majority's opinion is there any explanation why it was unreasonable for Lewis to fear that the malfunctioning elevator doors created a danger of serious physical harm to her. To the contrary, the majority mentioned that Lewis feared such harm, and thereafter ignores that aspect of her complaint.

The significance of Lewis' allegation that she feared serious physical harm cannot be minimized. This case is before us on a motion to dismiss. No discovery has taken place. Accordingly, our role is to "do substantial justice between the parties" by "accepting all of the plaintiff's allegations as true and *by drawing every reasonable inference in the plaintiff's favor*." (*Cook v. Askew* (1975), 34 Ill. App. 3d 1055, 341 N.E.2d 13.) With this in mind, it cannot be said, as a matter of law,

that Lewis could prove "no set of facts entitling her to relief." (*McCauley v. Chicago Board of Education* (1978), 66 Ill. App. 3d 676, 384 N.E.2d 100.) Again, she has alleged that she feared serious physical harm as a result of being trapped within the elevator. At the time of her confinement, it would not be unreasonable for Lewis to fear that the malfunction existing in the elevator doors was spreading throughout the entire elevator. Indeed, if provided with the opportunity, expert testimony may well reveal that Lewis' fear of serious physical harm was not only reasonable, but, depending on the condition of the elevator, wholly understandable. A review of relevant case law discloses that elevator accidents resulting in serious physical harm are not uncommon. (See, *e.g., Conerly v. Liptzen* (1972), 41 Mich. App. 238, 199 N.W.2d 833; *Koenig v. 399 Corp.* (1968), 97 Ill. App. 2d 345, 240 N.E.2d 164.) Consequently, based on Lewis' complaint, and the inferences to be drawn logically therefrom, it was not, as a matter of law, unreasonable for Lewis to fear that the malfunctioning elevator doors could have eventually caused her to suffer a serious physical injury.

Furthermore, the majority claims that Lewis is not a "person of ordinary sensibilities". In this respect, the majority states: "The finding of the Florida Court [in *Slocum v. Food Fair Stores of Florida, Inc.* (Fla. 1958), 100 So. 2d 396] in which the Illinois Supreme Court agreed [in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157] was that this was not a person of ordinary sensibilities. We judge that to be the situation in this instance."

The majority has again misread a supreme court opinion.

It is true that the *Knierim* court cited the *Slocum* case. However, a reading of *Knierim* demonstrates clearly that the Illinois Supreme Court cited the *Slocum* case to illustrate that an insult is not the type of intentional conduct calculated to cause severe emotional distress. Nowhere in the *Slocum* or *Knierim* opinions is there any statement, suggestion, or inference supporting the majority's claim that a court of law is to determine, based on the allegations of a complaint, whether a plaintiff is a "person of ordinary sensibilities." In fact, the *Knierim* court inferred quite the opposite when it stated: "The 'reasonable man' seems to be well known to *jurors* and we expect that they will also be acquainted with the 'man of ordinary sensibilities' ". (Emphasis added.) (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 86, 174 N.E.2d 157.) This statement, at the very least, demonstrates the supreme court's preference that it be a jury, rather than court of review, who determines whether a plaintiff is a "person of ordinary sensibilities." In attempting to justify a legally unsound result, the

majority has taken statements in the *Knierim* opinion completely out of context and in doing so, has failed to analyze the true holding of the case. Consequently, the majority's reliance on the *Knierim* opinion is misplaced.

Moreover, the majority's assertion that Lewis lacks "ordinary sensibilities" becomes even more curious when we note that Lewis is not the only person who has feared that malfunctioning elevator doors could lead to eventual suffocation. In *Bryan v. Otis Elevator Co.* (1968), 2 N.C. App. 593, 163 S.E.2d 534, the plaintiff, like Lewis, became trapped inside an elevator after the doors failed to open. The plaintiff in *Bryan* testified:

> "I was scared to death; I thought I would run out of air; that the air would just be gone, burn itself up. I was afraid I would not be able to get out; didn't know what would happen if it caught on fire or what would happen." 2 N.C. App. 593, 595, 163 S.E.2d 534, 537.

The outcome of the *Bryan* case was based on the insufficiency of the plaintiff's *res ipsa loquitor* case. Of significant importance, however, is the fact that the plaintiff in *Bryan* suffered the same fear (of suffocation) as did Lewis. In this respect, the *Bryan* case, at the very least, undercuts the majority's assertion that Lewis, because she feared suffocation from being trapped in a locked elevator, is not "a person of ordinary sensibilities."

In sum, I dissent from the majority for several reasons. First, the majority considers Lewis to be a bystander when, in fact, she was a direct victim of a defendant's alleged negligence. Second, the majority is in error in its belief that a court of review can determine, by simply reviewing the allegations in her complaint, that Lewis' fears of suffocation and serious physical harm were, as a matter of law, unreasonable. And third, the majority has assumed itself to be a trier of fact by making the determination that Lewis is not a "person of ordinary sensibilities" based on nothing more than the allegations contained in her complaint.

In my judgment, Lewis' complaint sets forth a good cause of action. She should be given her right to prove her case before a jury of her peers.