PENELOPE CORGAN, Plaintiff-Appellant, v. CONRAD MUEHLING *et al.*, Defendants-Appellees.

First District (2nd Division)   No. 86—2202

Opinion filed March 8, 1988.—Rehearing denied April 26, 1988.

Michael L. Bolos, Ltd., of Chicago (Michael L. Bolos, of counsel), for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Douglas L. Prochnow and Gary E. Dyal, of counsel), for appellee Conrad Muehling.

Cassiday, Schade & Gloor, of Chicago (Michael J. Morrissey, Michael J. Gallagher, Jean M. Golden, and Martha A. Pagliari, of counsel), for appellee R. J. Rodriguez.

JUSTICE SCARIANO delivered the opinion of the court:

In March of 1979, Penelope Corgan came under the psychological care of Conrad Muehling. She alleges in count I of her complaint that

he conducted her treatment negligently, was negligent in having sexual relations with her during this treatment, and "negligently failed either to recognize the evolution of the psychotherapeutic phenomenon of transference and counter-transference or deal appropriately with such evolving phenomenon," all of which caused her emotional trauma. Corgan contends that Muehling was not registered as a psychologist, but was able to practice psychology by having codefendant R. J. Rodriguez, M.D., a psychiatrist, submit Muehling's bills to insurance companies, including plaintiff's, for payment in Rodriguez' name. She averred that Muehling's actions caused her "to experience fear, shame, humiliation, and guilt and as a further result been compelled to undergo more intensive and extensive psychotherapeutic care and counseling." In count III she avers that the same damages were the result of Muehling's willful and wanton misconduct.

In count II Corgan maintains Rodriguez knew that Muehling was "not a registered psychologist in Illinois by virtue of Muehling's failure to have completed the requisite educational requirements for registration" and that Rodriguez had a consultant relationship with Muehling and "billings for Muehling's services were submitted under Rodriguez' name in cases in which consultations had been had." She asserts that by reason of the foregoing Rodriguez was negligent in his supervision of Muehling and in failing "to warn plaintiff of Muehling's proclivities." In count IV she claims that Corgan has a private right of action for nuisance because of Muehling's failure to register in Illinois as a psychologist. Corgan unsuccessfully attempted to add a count V, wherein she alleges a conspiracy between Muehling and Rodriguez which helped create the situation that caused her injuries.

This appeal is taken from those orders of the trial court which dismissed counts II and IV of the plaintiff's third amended complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) and denied her leave to add supplemental count V to the complaint. Pursuant to Supreme Court Rule 308(a) (107 Ill. 2d R. 308(a)), the trial judge certified the related questions of whether *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1, bars Corgan from recovering for emotional damages under counts I and II. This certification is the basis of Muehling's cross-appeal. We have granted Corgan permission to withdraw her appeal as to count II and proposed count V, pursuant to a settlement agreement with Rodriguez. Accordingly, Rodriguez is no longer a party to this appeal.

OPINION

COUNTS I, III

A. INTRODUCTION

■■ In count I, as noted above, Corgan charges Muehling with malpractice. Malpractice is a form of negligence (*Borowski v. Von Solbrig* (1975), 60 Ill. 2d 418, 328 N.E.2d 301; Illinois Pattern Jury Instructions, Civil, No. 105.01 (2d ed. 1971)), thus the first count is in essence for negligence. Therefore, the elements of a malpractice action are the same as for any other negligence case. *Borowski*, 60 Ill. 2d at 423.

●■ Furthermore, the parties agree that count III, wherein Corgan alleges willful and wanton misconduct, also is basically an action for negligence, since this court has held that willful and wanton misconduct is an aggravated form of negligence. (*Alley v. Champion* (1979), 75 Ill. App. 3d 878, 882, 394 N.E.2d 735.) Count III is *not* for the intentional infliction of emotional distress; indeed, Corgan does not contend otherwise. While we must accept all well-pleaded facts as true (*Rinck v. Palos Hills Consolidated High School District No. 230* (1979), 82 Ill. App. 3d 856, 863, 403 N.E.2d 470), Corgan does not plead the elements that constitute intentional infliction of emotional distress. (See, *e.g., Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157.) She does not allege that Muehling's actions were calculated to cause severe emotional distress; rather, among other allegations, she claims that he was acting solely for his own sexual gratification. Since Muehling held himself out as a psychologist, he will be held to the same standard of care as if he were indeed a psychologist. *Williams v. Piontkowski* (1949), 337 Ill. App. 101, 84 N.E.2d 843; *Matthei v. Wooley* (1897), 69 Ill. App. 654.

B. THE RICKEY CASE

Simply and briefly, the questions certified by the circuit court in this case are whether counts I and III of Corgan's third amended complaint are barred by *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1. In *Rickey*, the plaintiff was attempting to recover damages for the emotional distress he allegedly suffered as a result of the CTA's negligence when he saw his brother being injured on an escalator. (*Rickey*, 98 Ill. 2d at 548.) The Illinois Supreme Court, in a unanimous opinion, framed the issue in the following manner: "The underlying question is, of course, whether any person who suffers emotional distress can recover, but the question here specifi-

cally is whether a bystander at the injury of another who, generally under the decisions, is a close relative of the bystander can recover." *Rickey*, 98 Ill. 2d at 553.

The court then discussed the "impact rule," the governing law in Illinois at that time, which required physical impact or injury in order for a plaintiff to recover in an action for the negligent infliction of emotional distress. The *Rickey* court noted that this requirement had been frequently satisfied by trivial contacts, and that consequently the impact rule had fallen into disfavor. (*Rickey*, 98 Ill. 2d at 553.) The court also recognized that although recovery for emotional distress should not be determined solely on the basis of whether there was any physical impact visited upon the plaintiff, the appellate court went too far in adopting a standard which "would permit recovery for emotional disturbance alone." (*Rickey*, 98 Ill. 2d at 554, citing approvingly Restatement (Second) of Torts §436A (1965).) Our supreme court acknowledged that courts were hesitant in allowing recovery for purely emotional injuries and explained such unwillingness as follows: "[C]ourts have given as reasons for this reluctance apprehensions that the door would be opened for fraudulent claims, that damages would be difficult to ascertain and measure, that emotional injuries are hardly foreseeable and that frivolous litigation would be encouraged." *Rickey*, 98 Ill. 2d at 555.

The court then proceeded to announce its holding:

> "The standard that we substitute for the one requiring contemporaneous injury or impact is the standard which has been adopted in the majority of jurisdictions where this question of *recovery by a bystander* for emotional distress has been examined. [Citations.] That standard has been described as the zone-of-physical-danger rule. Basically, under it a *bystander who is in a zone of physical danger* and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress. \* \* \* *The bystander*, as stated, must show physical injury or illness as a result of the emotional distress caused by the defendant's negligence." (Emphasis added.) (*Rickey*, 98 Ill. 2d at 555.)

Accordingly, the supreme court remanded the cause because the complaint did allege physical manifestations, and it was unclear whether the plaintiff was endangered by the alleged negligence and had a reasonable fear for his own safety. *Rickey*, 98 Ill. 2d at 556.

C. THERAPIST-PATIENT SEXUAL CONTACT

We have long been aware that plaintiffs in other States have successfully maintained malpractice actions against their psychologist, psychiatrist, or social worker, predicated primarily on the therapist's alleged sexual contact with his patient. The leading case is from the State of New York, wherein the plaintiff alleged that she "was induced to have sexual intercourse with the defendant as part of her prescribed therapy," and was as a result "so emotionally and mentally injured that she was required to seek hospitalization on two occasions during 1971." (*Roy v. Hartogs* (1976), 381 N.Y.S.2d 587, 588, 85 Misc. 2d 891.) The court in *Roy* upheld the trial court's award of damages to the plaintiff, justifying its holding as follows: "By alleging that his client's mental and emotional status was adversely affected by this deceptive and damaging treatment, plaintiff's counsel asserted a viable cause of action ***." *Roy*, 381 N.Y.S.2d at 588, 85 Misc. 2d at 892.

The court of appeals in our sister State of Michigan, relying on *Roy*, held that allegations analogous to those in *Roy* were sufficient to state a cause of action for psychiatrist malpractice. (*Cotton v. Kambly* (1980), 101 Mich. App. 537, 300 N.W.2d 627.) In a somewhat similar case, a court in one of our southern jurisdictions held that the plaintiff's allegations that a psychiatrist had sexual relations with a patient's wife was "sufficient to permit the jury to pass upon the issue of whether malpractice occurred." *Mazza v. Huffaker* (1983), 61 N.C. App. 170, 178, 300 S.E.2d 833, 838.

The United States Court of Appeals has upheld an award for a plaintiff who alleged that the individual treating her psychiatric problems had committed malpractice by having sexual intercourse with her. (*Simmons v. United States* (9th Cir. 1986), 805 F.2d 1363.) The plaintiff contended that her therapist, employed by the United States as a social worker in the Indian Health Service, was guilty of malpractice which had caused her to attempt suicide. A doctor who gave psychiatric counseling to Simmons subsequent to her having terminated consultation with the social worker "stated that her counselor's misconduct was the cause of her psychological problems and that her problems were due essentially to his inappropriate response to the normal 'transference phenomenon' in therapy." *Simmons*, 805 F.2d at 1364.

The court, in a unanimous opinion, proceeded to analyze the plaintiff's malpractice claim. It said that "[t]ransference is the term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist." (*Simmons*, 805 F.2d at 1364.) The court went

on to explain that transference is crucial to the therapeutic process and that "[t]he proper therapeutic response is countertransference, a reaction which avoids emotional involvement and assists the patient in overcoming problems." (*Simmons*, 805 F.2d at 1365.) The court described as follows the legal consequences of a counselor's failure to properly manage the transference phenomenon: "When the therapist mishandles transference and becomes sexually involved with a patient, medical authorities are nearly unanimous in considering such conduct to be malpractice. [Citations.]" (*Simmons*, 805 F.2d at 1365.) Moreover, it recognized that "[c]ourts have uniformly regarded mishandling of transference as malpractice or gross negligence. [Citations.]" *Simmons*, 805 F.2d at 1365-66.

In a malpractice action in the State of Washington, the plaintiff alleged that she had a sexual relationship with her psychiatrist which "was the direct and proximate cause of damages to the plaintiff, including humiliation, mental anguish, shock, outrage, depression, inconvenience, medical expenses, loss of wages, marital difficulties and general deterioration of emotional well being." (*Omer v. Edgren* (1984), 38 Wash. App. 376, 377, 685 P.2d 635, 636.) The trial court granted summary judgment to the therapist, but the appellate court reversed, holding that there was sufficient evidence for a finder of fact to determine that the defendant had committed malpractice.

The court concluded by addressing the doctor's contention that his patient had not been damaged. It noted that the plaintiff "testified in her deposition she suffered no loss with respect to medical expenses, lost earnings, or marital difficulties," but that she "claimed general as well as special damages." (*Omer*, 38 Wash. App. at 381, 685 P.2d at 638.) The court, although cognizant of the difficulty articulated in *Rickey* of proving damages of this nature, nevertheless held that this problem in itself was not enough to bar the plaintiff from recovery because "[i]njury flowing from the alleged relationship, though difficult to prove, may be as real as that type of injury which can be proven with mathematical certainty." *Omer*, 38 Wash. App. at 381, 685 P.2d at 638.

D. THE APPLICATION OF RICKEY

The reasoning in *Rickey*, a case involving injuries alleged to have been sustained by a bystander to an accident, seems to some authorities to be just as compelling in cases in which the plaintiff is the direct victim of the negligence. (See, *e.g., Hammond v. Lane* (1987), 162 Ill. App. 3d 17, 515 N.E.2d 828; *Lewis v. Westinghouse Electric Corp.* (1985), 139 Ill. App. 3d 634, 487 N.E.2d 107; Note, *Rickey v.*

*Chicago Transit Authority: Consistent Limitation on Recovery for Negligent Infliction of Emotional Distress in Illinois,* 17 J. Mar. L. Rev. 563 (1984).) The supreme court's most recent pronouncement on the issue of the negligent infliction of emotional distress is *Siemieniec v. Lutheran General Hospital* (1987), 117 Ill. 2d 230, 512 N.E.2d 691, which involved claims for wrongful birth and wrongful life, as well as for the negligent infliction of emotional distress. In regard to the count for the negligent infliction of emotional distress, a majority of the court held:

> "There are no allegations in the complaint from which it can be said that the defendants' alleged negligence in any way endangered the parents of the impaired child. It is also not alleged that the parents have or will suffer any physical injury or illness resulting from the emotional distress allegedly caused by defendants' negligence." (*Siemieniec,* 117 Ill. 2d at 261.)

Accordingly, *Siemieniec* and *Rickey* can be distinguished from the case *sub judice* because both involved bystanders, while here we are concerned with a direct victim of the alleged negligence.

The scope of the holding in *Rickey* is thoroughly discussed in both the majority and dissenting opinions in the First District case of *Lewis v. Westinghouse Electric Corp.* (1985), 139 Ill. App. 3d 634, 487 N.E.2d 107. The majority in *Lewis* stated that the zone of danger test also applies to direct victims of negligence, emphasizing the *Rickey* court's statement of the issue of the case in general terms. (*Lewis,* 139 Ill. App. 3d at 637.) Accordingly, the court held that the plaintiff had not stated a valid claim for negligent infliction of emotional distress for injuries arising out of his being trapped in an elevator for forty minutes. In his dissent in *Lewis,* Justice Linn stated that "a reading of the *Rickey* opinion discloses that being in a 'high risk of physical impact' is a requirement imposed upon a bystander and not a direct victim ***." (*Lewis,* 139 Ill. App. 3d at 639 (Linn, J., dissenting).) Based on his interpretation of *Rickey,* he concluded that, "A direct victim such as Lewis is not required to allege that she was subjected to a high risk of physical impact because she was involved in the very accident producing that risk." *Lewis,* 139 Ill. App. 3d at 640 (Linn, J., dissenting).

In a recent First District case, the court held that *Rickey* applied to the direct victim of a psychologist's negligence in handling the transference phenomenon and in having sexual relations with his patient, although it was suggested in a specially concurring opinion that *Rickey* does not apply in cases involving direct victims. (*Hammond v. Lane* (1987), 162 Ill. App. 3d 17.) In a case concerning legal malprac-

tice, the Appellate Court for the Third District applied *Rickey*, although the court did not expressly state that *Rickey* applies to direct victims of negligence. (*Maere v. Churchill* (1983), 116 Ill. App. 3d 939, 944, 452 N.E.2d 694.) An in-depth analysis of *Rickey* also concludes that *Rickey* applies to direct victims of negligence. Note, *Rickey v. Chicago Transit Authority: Consistent Limitation on Recovery for Negligent Infliction of Emotional Distress in Illinois*, 17 J. Mar. L. Rev. 563 (1984).

This viewpoint, as noted previously, is not unanimous. (*McAdams v. Eli Lilly & Co.* (N.D. Ill. 1986), 638 F. Supp. 1173, 1178; *Lewis*, 139 Ill. App. 3d at 638 (Linn, J., dissenting).) In *McAdams*, the plaintiff alleged in her complaint that she had anatomical deformities because her mother ingested diethylstilbestrol (DES) during pregnancy, and that as a result she had been subjected to an increased risk of cancer. The plaintiff contended that her fear of cancer caused her emotional distress. In the following passage, the court explained its refusal to employ the zone of danger test: "The constant theme from *Braun* [*Braun v. Craven* (1898) 175 Ill. 401, 51 N.E. 657] through *Rickey* and its progeny is that Illinois courts will compensate genuine mental suffering by applying a rule which also sifts out frivolous claims. *** The requirements of the *Rickey* zone of danger rule, fashioned for a bystander case, cannot be applied here without contortions." *McAdams*, 638 F. Supp. at 1178.

As we have shown, there is considerable controversy and confusion over whether the zone of danger test should be used in cases involving direct victims of negligence. It is clear, however, that *Rickey* does not become inapplicable solely because a case involves a malpractice claim. *Gihring v. Butcher* (1985), 138 Ill. App. 3d 976, 979, 487 N.E.2d 75; accord *Siemieniec*, 117 Ill. 2d at 261.

In a social worker malpractice case the Second District did not even deem it necessary to mention *Rickey*. (*Horak v. Biris* (1985), 130 Ill. App. 3d 140, 474 N.E.2d 13.) The court concluded that the plaintiff had pleaded a valid cause of action for the negligent infliction of emotional distress. (*Horak*, 130 Ill. App. 3d at 147.) In another social worker malpractice action, this court held that the applicable test is the one used in any negligence case. (*Wogelius v. Dallas* (1987), 152 Ill. App. 3d 614, 504 N.E.2d 791.) The court in *Wogelius* held that "a plaintiff must plead: (1) that defendant owed a duty to plaintiff, (2) that defendant failed to perform or breached that duty, (3) that the breach was the proximate cause of plaintiff's injuries, and (4) damages." (152 Ill. App. 3d at 622; accord *Siemieniec*, 117 Ill. 2d at 270 (Simon, J., dissenting).) We perceive no reason why the approach used

by this court in the social worker malpractice cases of *Horak* and *Wogelius* should not be applied equally in psychologist malpractice cases such as the instant one. Moreover, the reasoning of the opinions in both *Horak* and *Wogelius* is more compelling than that of the *Lane* opinion, which inexplicably requires a plaintiff to demonstrate that she was in the zone of danger.

■ We believe that the application of the *Rickey* test in cases involving direct victims of malpractice is inappropriate and can result only, as was pointed out in *McAdams* and in the dissent to *Lewis*, in reasoning which can at best be characterized as tortuous. Our conclusion is supported by the decisions of courts in other jurisdictions which have awarded damages to plaintiffs who have had sexual relations with their therapists, although these plaintiffs have not alleged that they were physically injured. As we have seen, the Washington court in *Omer* directly addressed this concern, concluding that the plaintiff nevertheless deserved compensation. Moreover, were we to hold to the contrary, it would be hopelessly difficult for individuals to plead an action for psychologist malpractice which results only in emotional distress, for it seems incongruous to the point of absurdity that in cases involving malpractice by psychologists a victim should be required to demonstrate that he or she was put in fear of *physical* injury. Nor can there be any rational justification for our courts to mandate that in order to qualify for damages in a psychologist or social worker malpractice case a patient exhibit physical manifestations of his or her emotional trauma suffered at the hand of therapists who are qualified to minister to their needs only in cases of mental or emotional malaise, especially since, as the *Omer* court points out, such an injury, "though difficult to prove, may be as real as that type of injury which can be proven with mathematical certainty." (*Omer*, 38 Wash. App. at 381, 685 P.2d at 638.) We do not glean from *Rickey* any overarching unitary theory that would apply to the case at bar.

■ Therefore, in the absence of a decision by our supreme court which mandates a clearly different result, and supported by the law of our own appellate court and other jurisdictions, we hold that the zone of danger rule enunciated in *Rickey* has no application in this case, which involves a direct victim of negligence. Instead, we analyze this direct victim case under the same standards as any other negligence action, as was done by this court in both *Horak* and *Wogelius*.

### COUNT IV

■ Corgan alleges that Muehling was not registered as a psychologist in Illinois; nor is there any evidence in the record as to whether

he was licensed in any jurisdiction. Individuals who hold themselves out as psychologists but do not register under the Psychologist Registration Act (Ill. Rev. Stat. 1981, ch. 111, par. 5327) clearly are public nuisances. The Act provides:

"It is hereby declared to be a public nuisance for any person to represent himself as a psychologist or that the services he renders are psychological services without having in effect a currently valid certificate as defined in this Act. The Director or the State's attorney of the county in which such nuisance has occurred may file a complaint in the circuit court in the name of the people of the State of Illinois perpetually to enjoin such person from performing such unlawful acts." Ill. Rev. Stat. 1981, ch. 111, par. 5327.

■ The parties agree that the statute does not explicitly provide for a private right of action for nuisance. Corgan contends, however, that there is an implied right of action in nuisance for a person's failure to register under the Act. This court has described the standards for implying private rights of action from statutory law as follows:

"Where it is consistent with the underlying purpose of a statute and necessary to achieve its aim, a private right of action can be implied. (*Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 386.) In the analysis of whether a private right of action may be maintained, these questions are material: (1) Were plaintiffs members of the class for whose benefit the statute was enacted; (2) is implication of a private right consistent with the underlying purpose of the Act; (3) is plaintiff's injury one the statute was designed to prevent; (4) is implication of a civil private right of action necessary to provide an adequate remedy for violations of the Act. 89 Ill. 2d 379, 391." *Rhodes v. Mill Race Inn, Inc.* (1984), 126 Ill. App. 3d 1024, 1026, 467 N.E.2d 915.

The first three requirements are incontestably satisfied in the instant case. The public nuisance section of the Psychologist Registration Act was designed to protect members of the public from suffering mental or emotional injuries at the hands of unauthorized practitioners. Therefore, implication of a private right of action is consistent with the purpose of the Act.

■ The last criterion of the test for implying rights of action in cases of the type now before this court is a paraphrase of the Restatement (Second) of Torts requirement that the individual suffer an injury different in kind from that of the general public. (See Restatement (Second) of Torts §821C (1977).) Certainly Corgan's alleged

psychological or emotional injuries were different from those of the general public. Moreover, the remedy provided for by the statute does not adequately compensate Corgan for her injuries; the injunctive remedy of the Act prevents further injuries, but does not compensate for those already suffered at the hands of unqualified psychologists.

The issue of whether there is an implied right of action in nuisance is controlled by the decision of our supreme court in *Sawyer Realty Group, Inc. v. Jarvis Corp.* (1982), 89 Ill. 2d 379, 432 N.E.2d 849. In that case the court inferred a private right of action against unregistered stockbrokers from the Brokers Licensing Act (Ill. Rev. Stat. 1977, ch. 111, par. 5701 *et seq.*), which provided for injunctions but no remedy for individuals who had already sustained injuries. The *Sawyer* court's conclusion is equally descriptive of the issue in the case *sub judice*:

> "The sanctions provided for in the Brokers Licensing Act are of no help to the plaintiffs here. The express remedies available to the Sawyer Realty Group are inadequate to redress the injuries the plaintiffs have sustained.
>
> The plaintiffs were members of the class for whose benefit the statute was enacted. Implication of a private right is consistent with the underlying purpose of the Act. The plaintiffs' injury is one the statute was designed to prevent. Implication of a civil private right of action for compensatory damages under the Brokers Licensing Act is necessary to provide an adequate remedy for self-serving, deceptive and fraudulent practices of brokers and salesmen that the Act seeks to prevent. Given these circumstances we recognize an implied private right of action for damages." (*Sawyer*, 89 Ill. 2d at 391.)

Accordingly, we hold that Corgan has a private right of action for nuisance derived from the Psychologist Registration Act. Ill. Rev. Stat. 1981, ch. 111, par. 5327.

In conclusion, we hold that counts I, III, and IV of the complaint state valid causes of action. Accordingly, we affirm as to counts I and III, and vacate as to count IV.

Affirmed in part; vacated in part and remanded.

HARTMAN, P.J., and BILANDIC, J., concur.