LEROY NEUBERG *et al.*, Plaintiffs-Appellants, *v.* MICHAEL REESE HOSPITAL AND MEDICAL CENTER *et al.*, Defendants-Appellees.

First District (1st Division)   No. 76-1723

Opinion filed May 22, 1978.

Theodore M. Becker and J. Samuel Tenenbaum, both of Becker & Tenenbaum, of Chicago, for appellants.

Wildman, Harrold, Allen & Dixon, of Chicago, for appellees Arthur H. Rosenblum and Samuel J. Pearlman.

Lord, Bissell & Brook, of Chicago, for appellees Michael Reese Hospital and Medical Center and Michael Reese Research Foundation.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

LeRoy and Sari Neuberg appeal from the trial court's dismissal of their two-count complaint against defendants, Michael Reese Hospital and Medical Center, Michael Reese Research Foundation, Doctor Arthur H. Rosenblum and Doctor Samuel J. Pearlman.

The sole issue on review is whether the plaintiffs' complaint states a cause of action for intentional infliction of severe emotional distress on behalf of the plaintiffs against any of the named defendants.

This action was orginally filed on November 12, 1975, by the Neubergs and their two sons, Leland and Joel. On April 30, 1976, pursuant to leave of court, the Neuberg parents alone filed a first amended complaint, their sons having elected to maintain an action in Federal court. In a two-count complaint, the Neubergs sought compensatory and punitive damages for the intentional and/or negligent infliction of emotional distress.

The complaint alleged that in July 1947, Michael Reese Medical Center accepted both Leland and Joel Neuberg as patients for treatment of inflamed tonsils and tonsilitis. Doctor Philip Rosenblum, a member of Michael Reese's Pediatrics Department, was the boys' treating physician.

He recommended the use of X-ray treatments to shrink the inflammation of the Neubergs' enlarged tonsils. Doctor Erich M. Uhlmann, chairman of the department of radiology at Michael Reese, was the radiologist in charge of the treatment the Neuberg boys received and directed the X-ray treatments in question. Plaintiffs contend that Rosenblum and Uhlmann employed a purely experimental X-ray treatment procedure to the neck area of both boys while failing to warn plaintiffs that that treatment could produce harmful and dangerous side effects, including cancer. Plaintiffs further contend that the Neuberg boys were improperly treated with excessive amounts of radiation which was permitted to scatter from its proper target, resulting in harmful and dangerous side effects.

Both Doctor Philip Rosenblum and Doctor Uhlmann died prior to the filing of the Neuberg's complaint. Their respective estate's representatives were joined in the Neubergs' original action. On July 9, 1976, the summons served upon the executor of the estate of Doctor Erich Uhlmann was quashed and the estate of Doctor Uhlmann was dismissed from the case. On July 12, 1976, the summons served upon the former executors of the estate of Doctor Philip Rosenblum were quashed and the estate of Doctor Rosenblum was dismissed from the case. Neither estate's representatives were subsequently served with summons, and their respective dismissals are not before the court.

The complaint further alleged that Doctor Arthur Rosenblum, a member of the pediatrics department at Michael Reese, and an associate of Doctor Philip Rosenblum, negligently and willfully and wantonly concurred in the decision to advise the X-ray treatment of the Neuberg boys. However, Doctor Arthur Rosenblum never actually treated the Neuberg children.

Doctor Samuel J. Pearlman, a member of the Ear, Nose and Throat Department at Michael Reese, was likewise named a defendant. Doctor Pearlman was alleged to have recommended the use of X-ray treatment in young patients inflicted with enlarged and inflamed tonsils. Doctor Pearlman was the author of medical publications and pediatric society addresses which advocated the use of X-ray treatment in such cases. Similarly, Doctor Pearlman never actually treated the Neubergs.

Defendant, Michael Reese Hospital, Medical Center and Research Foundation, allegedly failed to use reasonable diligence in its selection of the other named defendants, negligently employed X-ray radiation as a product, and committed assaults on the Neuberg children by use of such product.

Sometime between 1947 and 1951, Michael Reese Medical Center discontinued or reduced the tonsil X-ray treatment, due to increased scientific evidence connecting thyroid cancer with tonsil radiation. On

February 12, 1956, Doctor Erich Uhlmann, then chairman of the Michael Reese Tumor Clinic, published a scientific paper at the winter meeting of the Central Society of Nuclear Medicine denying any connection between Michael Reese's tonsil radiation treatment and thyroid cancer.

In 1962, Leland Neuberg developed cancer of the thyroid gland and the adjoining area. In September 1962, a thyroidectomy and radical neck resection were performed followed by 28 deep X-ray treatments to the neck area.

In 1966, Doctors Philip and Arthur Rosenblum, in conjunction with Michael Reese Medical Center, published a scientific medical article which acknowledged the possible causal connection between the tonsil X-ray treatment employed by Michael Reese and thyroid cancer.

In 1974, Joel Neuberg developed a nodule on his thyroid gland. In November 1974, the growth was first suspected of being cancerous. Both Neuberg children are alleged to have been permanently disfigured, suffer impaired health, require medication for the remainder of their lives, have a shorter life expectancy, continue to experience pain and suffering and expend large sums for medical treatment.

In 1974, Michael Reese Medical Center circulated an announcement to local radio stations, television stations and newspapers. The announcement acknowledged the proximate causal connection between tonsil X-ray treatment and thyroid cancer, and solicited the recall of former patients for examination and treatment.

This action was commenced November 12, 1975. The Neuberg boys having elected to maintain their individual action in Federal court, Mr. and Mrs. Neuberg filed their cause of action for intentional infliction of emotional distress in the form of the first amended complaint. The Neubergs allegedly "suffered and for the remainder of their lives will continue to suffer great and painful mental, psychological and emotional trauma as well as pain and worry over the present and future health and well-being of their sons." Such condition is claimed to be the direct and proximate result of the various defendants' wrongful, negligent, willful, wanton and reckless conduct.

On August 12, 1976, defendants Rosenblum and Pearlman filed their motion to dismiss the first amended complaint. Defendants, Michael Reese Hospital and Medical Center and Michael Reese Research Foundation adopted their motion. On October 1, 1976, the trial court entered its order granting the motion on grounds of failure to state a cause of action under Illinois law. The Neubergs appeal from that order as to Michael Reese Hospital, Medical Center and Research Foundation, Doctor Arthur H. Rosenblum and Doctor Samuel J. Pearlman.

■■■ Since this appeal is taken from an order granting a motion to dismiss the complaint, the pleadings should be liberally construed with a

view towards doing substantial justice between the parties. (Ill. Rev. Stat. 1975, ch. 110, par. 33(3).) A motion to dismiss admits, for the purposes of the motion, as true all facts well pleaded together with all reasonable inferences which could be drawn from those facts. (*Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 493, 147 N.E.2d 69, 72; *Doner v. Phoenix Joint Stock Land Bank* (1942), 381 Ill. 106, 112, 45 N.E.2d 20, 23.) Even given the inferences from plaintiffs' pleading most favorable to the plaintiffs, their complaint fails to state a cause of action for recovery for emotional distress under the present law of Illinois.

The law has long been that a plaintiff may not recover for emotional distress unless the plaintiff himself was also physically injured by defendant's conduct. (See *Elgin, Aurora & Southern Traction Co. v. Wilson* (1905), 217 Ill. 47, 75 N.E. 436; *Braun v. Craven* (1898), 175 Ill. 401, 51 N.E. 657; *Benza v. Shulman Air Freight* (1977), 46 Ill. App. 3d 521, 361 N.E.2d 91; *McCullough v. Orcutt* (1957), 14 Ill. App. 2d 513, 145 N.E.2d 109.) Mr. and Mrs. Neuberg do not, and indeed, could not contend that such direct physical injury has occurred.

■■■ The only recognized exception to the "physical impact" rule is that set forth by the supreme court in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157. In *Knierim,* the complaint alleged that defendant intentionally caused plaintiff emotional harm by telling her that he was going to kill her husband and then intentionally carrying out the act of murder. The *Knierim* court characterized the case as involving "severe mental disturbances inflicted by *intentional* actions wholly lacking in social utility" (emphasis added) (22 Ill. 2d 73, 85, 174 N.E.2d 157, 164), and for the first time allowed an action for the intentional infliction of emotional distress. As recently as *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765, that court defined the necessary elements of the cause of action.

> "First, the conduct must be extreme and outrageous. * * * 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency* * *.' Restatement (Second) of Torts, sec. 46, comment d (1965).
>
> Second, infliction of emotional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be *severe.* * * * 'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.' Comment *j.* See also Prosser, Law of Torts sec. 12, at 54 (4th ed. 1971).
>
> Third, reckless conduct which will support a cause of action under the rules stated is conduct from which the actor knows

severe emotional distress is certain or substantially certain to result. (Comment *i.*) Liability extends to situations in which there is a high degree of probability that severe emotional distress will follow and the actor goes ahead in conscious disregard of it. Prosser, Law of Torts 60 (4th ed. 1971).

Fourth, as is stated in comment *e*, the extreme and outrageous character of the conduct may arise from an abuse of a position or a relation with another which gives the actor actual or apparent authority over the other or power to affect his interests." 66 Ill. 2d 85, 89-90, 360 N.E.2d 765, 767.

■■ Plaintiffs' first amended complaint fails to allege extreme or outrageous conduct by the defendants which is "beyond all possible bounds of decency." *Public Finance Corp. v. Davis* (1977), 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767. Plaintiffs allege that their treating physician recommended X-ray therapy for their sons' tonsils in 1947 and that defendant, Doctor Arthur Rosenblum, concurred in this recommendation. Plaintiffs further allege that defendant, Doctor Samuel Pearlman, recommended such therapy in his medical articles and speeches in the medical community. Doctor Arthur Rosenblum's purported concurrence in another physician's recommendation of X-ray therapy and Doctor Pearlman's purported support for such treatment in his speeches and articles cannot reasonably be construed as so extreme and outrageous as to be "beyond all possible bounds of decency."

■■ Similarly, Michael Reese Hospital and Medical Center and Michael Reese Research Foundation cannot be faulted for the conduct of their agents. The irradiation of tonsils was first developed in the 1920's as an alternative to surgery for dealing with inflamed tonsils, adenoids and throat ailments. In the 1950's, when evidence of a connection between thyroid cancer and X-ray treatment first surfaced, Michael Reese terminated its use. As the medical studies increased the data on the likelihood of a connection, Michael Reese in 1974 sought to contact and recall all former X-ray patients for examination and possible treatment. Michael Reese acted upon a University of Chicago study which revealed for the first time that thyroid cancer may not develop for 20 years or more after X-ray treatments were administered. Previously it had been thought that the disease, if at all, would develop within 10 years. The defendant hospital's use of a recognized medical procedure for the treatment of throat ailments, which procedure was later discovered to have possible adverse side effects which at the time of treatment were unknown, cannot be termed "intentional or outrageous" conduct which should now render the hospital liable for claims of emotionally distressed parents and relatives.

■■■ As to all defendants, Doctors Rosenblum and Pearlman, Michael

Reese Hospital and Medical Center, and Michael Reese Research Foundation, the plaintiffs have failed to allege that the acts of any of the defendants were done *intentionally*. Indeed, count I of the first amended complaint contends that defendants "carelessly and negligently" performed the acts which caused their sons' injuries. Count II realleges the averments of count I, merely adding that such acts were done "wilfully, wantonly, and with a reckless disregard for the health, well-being and safety" of plaintiffs. Such allegations cannot take the place of a clear statement that defendants committed the alleged acts with the intention of inflicting severe emotional distress upon plaintiffs. (See *Jarvis v.Herrin City Park District* (1972), 6 Ill. App. 3d 516, 522, 285 N.E.2d 564, 568; *Spivack v. Hara* (1966), 69 Ill. App. 2d 22, 26, 216 N.E.2d 173, 175.) Considered with the second element of the cause of action as outlined in *Davis*, plaintiffs cannot reasonably contend that defendants knew that severe emotional distress was "certain or substantially certain" to result from defendants' alleged acts in 1947. (*Public Finance Corp. v. Davis* (1977), 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767.) See also *Benza v. Shulman Air Freight* (1977), 46 Ill. App. 3d 521, 524, 361 N.E.2d 91, 93.

We find that plaintiffs' complaint fails to state a cause of action, under the present Illinois law, for the intentional infliction of severe emotional distress, and accordingly affirm the trial court's dismissal of plaintiffs' complaint.

Judgment affirmed.

LORENZ and McGLOON, JJ., concur.