DOROTHY KOELLER, Plaintiff-Appellant, v. COOK COUNTY *et al.*, Defendants-Appellees.

First District (4th Division) No. 1—87—2116

Opinion filed March 9, 1989.

426

Law Offices of John D. Parrilli, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (John Cherry, Myra J. Brown, and Wayne R. Braverman, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE McMORROW delivered the opinion of the court:

Plaintiff, Dorothy Koeller, appeals from summary judgment for defendants, Cook County (the County) and the Cook County deputy chief medical examiner, Dr. Edmund Donoghue, in an action seeking recovery for mental anguish she suffered as a result of the allegedly negligent, reckless and wilful and wanton acts and omissions of defendants in their handling of the body of her deceased brother, David Koeller. The remaining named defendant, the City of Chicago, is not a party to this appeal. We affirm.

Twenty people, including plaintiff's brother, David Koeller, died as the result of a fire in an apartment building at 5523 N. Kenmore Avenue in Chicago on March 14, 1981. The bodies of the victims were transported to the Cook County medical examiner's office by members of the Chicago police department. A body assigned the number 81—323 was tentatively identified in a police report as being that of "Donald Koelleck," which was the name on a prescription medicine vial found in a pocket of the deceased's clothing. The police officers who transported the body to the morgue showed the vial to a morgue attendant and then placed it in the body bag containing body 81—323. Dr. Donoghue did not see or request access to the police report to aid in the identifications of any of the fire victims, nor did he know about or ever receive the vial mentioned in the report which, apparently, was lost. He was, however, in possession of a list of the names of the tenants of the apartment building. Although body 81—323 was partially burned, including mild burning over the face, the burning was not severe enough to interfere with visual identification or fingerprinting.

An investigator from the medical examiner's office contacted the Koeller family two days after the fire to inform them that it appeared from the tenant list that a person named David or Donald

Koeller may have been one of the victims of the fire. However, a few days later, the investigator telephoned Daniel Koeller, a brother of the plaintiff and the deceased, and told Daniel that "they didn't believe it was David."

On March 16, 1981, a security guard who in 1980 had shot Donald Koeller, David's twin brother, viewed body 81—323 and stated that it was not that of Donald Koeller. This conclusion was consistent with the physical examination of the body, which revealed no gunshot wounds.

On March 15, Ronald Zimney received a call from a friend who reported to him that his brother, Lee Zimney, had been in the apartment building on the night of the fire. On March 18, Ronald and his wife, Gail, looked at photographs and television monitor films of the four yet-unidentified victims. Ronald and Gail both agreed that body 81—323 was that of Lee Zimney. Gail also viewed the body and stated that although the burns made identification difficult, she believed, from the size, build and facial features, that it was the body of her brother-in-law. The Zimneys also supplied Dr. Donoghue with a description of Lee Zimney and his dental records. Dr. Donoghue compared Lee Zimney's dental X rays with those taken of body 81—323 and found them to be similar. Later that same day, after being informed of the Zimneys' identification of the body, Dr. Pavlik, chief of forensic odontology at the medical examiner's officer, also made a comparison of the X rays and concurred with Dr. Donoghue's preliminary finding that they matched.

On the basis of the Zimneys' identification of the body as being that of Lee Zimney and the similarities in the dental X rays, as well as the lack of any conflicting identification evidence—such as fingerprints, the taking of which is normally the responsibility of the police, or any personal effects found on or with the deceased—Dr. Donoghue authorized the release of the body to the Zimneys. The body was cremated and interred on March 19, 1981, by the Zimney family.

Almost one year later, the police report tentatively identifying body 81—323 as "Donald Koelleck" on the basis of the medicine vial was brought to the attention of Dr. Donoghue. Plaintiff was contacted and thereafter came to the medical examiner's office to view photographs of all the victims of the fire. She identified the photograph of body 81—323 as being that of her brother, David Koeller. After further examination by a second forensic odontologist, it was determined that the dental X rays of body 81—323 did not match those of Lee Zimney. Dr. Donoghue also contacted the Zimneys to in-

form them of the misidentification. After a reexamination of the photographs she viewed in March 1981, Gail Zimney still believed the photograph of body 81—323 to be that of Lee Zimney. In March 1982, the remains of David Koeller were exhumed and given to the Koeller family.

On June 28, 1982, plaintiff filed a three-count complaint against defendants. In her complaint, as subsequently amended, plaintiff alleged that defendants had negligently, recklessly and wilfully and wantonly failed to make a proper identification of the body of her brother; failed to take all steps necessary to keep and maintain the body in a condition suitable for a proper burial; failed to deliver the body to her in substantially the same condition it had been received; failed to do whatever was necessary to insure that the body would be maintained in as good a condition as it was when received; failed to deliver the body to her despite her repeated requests for it; denied her the opportunity to make a positive identification of the body; interfered with her efforts to arrange a proper and decent burial of the body; and allowed her brother's misidentified body to be cremated against her wishes. The complaint further alleged that she suffered extreme mental anguish as a proximate result of defendants' acts and omissions in the handling and disposition of her brother's body.

Defendants filed a motion to dismiss plaintiff's complaint on the ground that on March 25, 1982, plaintiff's father, David's next of kin, had signed a release holding defendants harmless for any damages arising from the misidentification, incorrect release and cremation of David Koeller's body. In response thereto, plaintiff argued that the release had been procured by fraud and coercion while her father was under severe duress; that the fraudulently obtained release did not bind David's estate or other family members; that she had since been appointed administratrix of David's estate; and the suit was brought by her as the decedent's sister "for negligent infliction of severe mental distress."

Defendants thereafter withdrew their motion to dismiss on the basis of the release and, on December 16, 1986, filed a joint motion for summary judgment on the grounds that they were immune from liability under sections 2—109 and 2—201, as well as section 2—202, of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, pars. 2—109, 2—201, 2—202) (the Tort Immunity Act). Defendants also asserted as a basis for dismissal that an estate is not entitled to relief for wrongful interference with a corpse or for emotional harm that may have resulted

from any allegedly unauthorized act relating to a corpse.

In her response to the motion for summary judgment, plaintiff argued that the immunity sections relied upon by defendants did not apply to the acts and omissions alleged in her complaint. Plaintiff also stated that although she was identified in the caption of the complaint as administratrix of the estate, the suit was not brought by her in that capacity but, rather, on her own behalf as the decedent's sister.

On January 26, 1987, defendants filed a reply to plaintiff's response to the motions for summary judgment reasserting the applicability of the Tort Immunity Act to the instant case. Citing *Courtney v. St. Joseph Hospital* (1986), 149 Ill. App. 3d 397, 500 N.E.2d 703, which had been decided less than three months earlier, defendants also moved for dismissal on the ground that Illinois does not recognize a cause of action for emotional distress arising from the negligent mishandling of a corpse.

Following a hearing on June 3, 1987, the trial court found that defendants were immune from liability under sections 2—201 and 2—109 of the Tort Immunity Act, which provide, respectively: "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury *** when acting in the exercise of such discretion even though abused" (Ill. Rev. Stat. 1985, ch. 85, par. 2—201); and that "[a] local public entity is not liable for an injury resulting from an act or omission of its employees where the employee is not liable" (Ill. Rev. Stat. 1985, ch. 85, par. 2—109). The trial court granted defendants' motions for summary judgment and dismissed plaintiff's complaint. This appeal followed.

Plaintiff contends that the trial court erred in ruling that the defendants were immune from liability under sections 2—201 and 2—109 of the Tort Immunity Act. Plaintiff argues that the duties of the County and Dr. Donoghue with respect to the handling and disposition of corpses received by the medical examiner's officer are not discretionary functions but, rather, are "ministerial" or "operational" duties which are not immunized by the Tort Immunity Act.

■ However, it is not necessary to reach this issue since we conclude that plaintiff's complaint failed to state a cause of action in the first instance and, therefore, was properly dismissed. We recognize that this was not the basis upon which the trial court granted judgment for defendants and dismissed plaintiff's complaint. However, as the supreme court stated in *Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 457 N.E.2d 9:

"It is the judgment and not what else may have been said by the lower court that is on appeal to the court of review. [Citations.] The reviewing court is not bound to accept the reasons given by the trial court for its judgment [citation], and the judgment may be sustained upon any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct." 98 Ill. 2d at 387.

As noted above, in their reply to plaintiff's memorandum in opposition to their motion for summary judgment, defendants cited to and briefly argued the applicability of *Courtney v. St. Joseph Hospital* (1986), 149 Ill. App. 3d 397, 500 N.E.2d 703, *appeal denied* (1987), 114 Ill. 2d 544, to the instant case. Nevertheless, the only issue reached at the hearing was whether the Tort Immunity Act afforded defendants immunity for the acts and omissions alleged by plaintiff. However, we find that the holding in *Courtney* is applicable to the instant case and must be addressed.

In *Courtney*, the plaintiff-widow filed a complaint alleging that she suffered severe emotional distress resulting from the defendant-hospital's negligent failure to preserve the body of her deceased husband in a condition suitable for an open-casket wake. According to the complaint, the body had decomposed after the refrigeration unit in the hospital morgue malfunctioned. This court permitted an interlocutory appeal pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308) to decide the question certified by the trial court following its denial of the defendant's motion to dismiss. The question accepted for discretionary review was "whether Illinois recognizes a cause of action for emotional distress arising from the negligent mishandling of a corpse." The *Courtney* court held that *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1, was dispositive of that question.

In *Rickey*, the eight-year-old plaintiff sought damages for the emotional distress he suffered as a result of witnessing the near-strangulation of his five-year-old brother by an article of clothing which had become entangled in the mechanism of a CTA escalator. In its review of plaintiff's claim, the supreme court first noted that under the long-standing "impact rule" applied in Illinois, "recovery for negligently caused emotional distress suffered by the direct victim or by a bystander who witnesses the injury of another has been consistently denied unless it was accompanied by a contemporaneous physical injury to or impact on the plaintiff." (98 Ill. 2d at 550.) Following a discussion of the reasons a large number of jurisdictions have aban-

doned the "impact rule," the court announced a new standard which would henceforth be applied in Illinois. The supreme court defined that standard, generally known as the "zone of physical danger rule," as follows:

"[A] bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress. This rule does not require that the bystander suffer a physical impact or injury at the time of the negligent act, but it does require that he must have been in such proximity to the accident in which the direct victim was physically injured that there was a high risk to him of physical impact." 98 Ill. 2d at 555.

■■ ■ Applying the rule enunciated in *Rickey*, the appellate court in *Courtney* held that in order to state a cause of action for negligent infliction of emotional distress under the "zone of physical danger" test, the plaintiff was required to show that she was within a zone of physical danger; that she experienced reasonable fear for her own safety and that physical illness or injury resulted from the emotional distress caused by defendant's negligence. As noted by the court, however, the plaintiff in *Courtney* did not allege, nor did she contend on appeal, that she was within a zone of physical danger causing her to fear for her own safety or that she suffered physical injury or illness as a result of the emotional distress she suffered upon learning that her husband's body had decomposed. The court disagreed with plaintiff's argument that the requirements for recovery under *Rickey* do not apply to direct victims of negligence. The court stated that the focus of that standard is on whether the plaintiff was in proximity to the danger, and held, in response to the question of law certified on appeal, "that Illinois does not recognize a cause of action for emotional distress arising from the negligent mishandling of a corpse." *Courtney*, 149 Ill. App. 3d at 403.

The holding in *Courtney* comports with numerous other decisions applying the standard set out in *Rickey*. E.g., *Johnston v. St. Anne's Hospital West, Inc.* (1986), 146 Ill. App. 3d 763, 497 N.E.2d 408 (complaint properly dismissed for failure to state a cause of action for negligent infliction of emotional distress where plaintiffs, decedent's wife and daughter, could not have shown that they were in a zone of physical danger causing them reasonable fear for their own safety where the hospital failed to promptly inform them of the decedent's death and they unexpectedly found him dead in his hospital room); *Lewis v. Westinghouse Electric Corp.* (1985), 139 Ill. App. 3d

634, 487 N.E.2d 1071 (to state a cause of action under the zone of physical danger rule, the plaintiff, whether bystander *or* direct victim, must have been in such proximity to the accident that there was a high risk of physical impact so as to cause her reasonable fear for her own safety and plaintiff must also show a physical injury or illness resulting from the emotional distress for which recovery is sought); *Gihring v. Butcher* (1985), 138 Ill. App. 3d 976, 487 N.E.2d 75 (the zone of physical danger rule requiring a showing that defendant's negligence placed plaintiff in reasonable fear for her own safety precluded plaintiff's action against her husband's former medical and psychiatric physicians for negligent infliction of emotional distress arising after the plaintiff found her husband dead in their garage as a result of suicide); see also *Hammond v. Lane* (1987), 162 Ill. App. 3d 17, 516 N.E.2d 470 (plaintiff who did not allege that she was in a zone of danger and had reasonable fear for her personal safety failed to state a cause of action for negligent infliction of emotional distress resulting in physical illness or injury from alleged sexual contacts by her psychiatrist).

■ Here, as in *Courtney*, plaintiff seeks damages for the emotional distress she suffered as a result of defendants' allegedly negligent misidentification and mishandling of her deceased brother's body. Just as in *Courtney*, however, plaintiff did not allege any physical injury or illness resulting from the emotional distress; neither did she plead, nor could the facts presented possibly support a contention, that she witnessed any accident or injury to her brother or that she was in such proximity to the negligent acts and omissions as to be in a zone of physical danger causing her to experience reasonable fear for her own safety. To the contrary, the pleadings, depositions, and affidavits in the record categorically and undeniably establish that the decedent's death took place before, and was completely unrelated to, the acts and omissions complained of and that those acts and omissions occurred almost a year before she became aware of them. (*Cf. Johnston v. St. Anne's Hospital West, Inc.* (1986), 146 Ill. App. 3d 763, 497 N.E.2d 408 (plaintiffs who did not witness any accident or injury to decedent could not show that they were in a zone of physical danger causing them to fear for their own safety); see also *Hearon v. City of Chicago* (1987), 157 Ill. App. 3d 633, 510 N.E.2d 1192.) In summary, we conclude that plaintiff's complaint purports to state a cause of action for the infliction of emotional distress arising from the negligent mishandling of a corpse. Because, under the analysis of the supreme court in *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 457 N.E.2d 1, Illinois does not rec-

ognize such an action (*Courtney v. St. Joseph Hospital* (1986), 149 Ill. App. 3d 397, 500 N.E.2d 703), the complaint was properly dismissed.

The inclusion of the count in plaintiff's complaint alleging that the County recklessly and wilfully and wantonly[1] committed the acts and omissions alleged in plaintiff's complaint does not alter our conclusion that the complaint was properly dismissed.

■ The tort of *intentional* infliction of emotional distress was first recognized in Illinois in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157, as an exception to the long-standing rule that a plaintiff may not recover for emotional distress unless he/she was physically injured by the defendant's conduct. Fifteen years later, in *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765, the supreme court additionally recognized the existence of a cause of action for severe emotional distress caused by *reckless* conduct. The court held that to sustain an action for either intentional *or* reckless infliction of emotional distress: (1) the conduct giving rise to it must be so outrageous in character and so extreme in nature as to go beyond all possible bounds of decency; (2) the emotional distress was so severe that no reasonable person could be expected to endure it; and (3) despite a high probability that such severe emotional distress will follow, the actor goes ahead with the conduct in conscious disregard of that probability. (66 Ill. 2d at 89-90.) See generally McCarthy, *Illinois Law in Distress: The "Zone of Danger" and "Physical Injury" Rules in Emotional Distress Litigation*, 19 J. Marshall L. Rev. 17 (1985).

In *Hearon v. City of Chicago* (1987), 157 Ill. App. 3d 633, 510 N.E.2d 1192, we applied these tests in reviewing the sufficiency of a complaint presenting a factual situation strikingly similar to the one at bar. In that case, the plaintiff-widow filed a complaint against the City of Chicago, Cook County and various doctors, police officers and funeral directors for actions relating to the death, autopsy, and burial by the defendants of the body of her husband, who was found stabbed to death. The plaintiff learned of his death four months later and was then asked by the doctors to identify the exhumed body. In her complaint, plaintiff contended that the failure of the county doctors and officers to notify her of her husband's death even though they knew or should have known his identity from papers found on the body, the unnecessarily extensive autopsy performed by them,

---

[1]The terms "reckless" and "wilful and wanton" are considered legal equivalents. *Hearon v. City of Chicago* (1987), 157 Ill. App. 3d 633, 637, 510 N.E.2d 1192.

their disposition of the body, and their request that she view the body without warning her of its condition were all done in conscious disregard of and with utter indifference to her rights, and that she suffered severe emotional distress as a result thereof. The appellate court found that the facts presented did not reasonably support the conclusions: that defendants' conduct was so outrageous in character or extreme in nature as to have been beyond all possible bounds of decency; that the distress she suffered was so severe that no reasonable person could be expected to endure it; that defendants knew that severe emotional distress was certain or substantially certain to result from acts they performed five months earlier; or that they continued to act in the face of a high degree of probability that severe emotional distress would ultimately occur. Consequently, the court held that plaintiff had failed to satisfy the threshold elements necessary to bring an action to recover for the infliction of emotional distress. (157 Ill. App. 3d at 636.) The facts in the instant case compel the same conclusion.

Plaintiff argues in her brief that the defendants committed a "series of errors, *** beginning with the loss of evidence that would have identified the body, that culminated in the unauthorized cremation of Koeller's body" and that "the reckless and sloppy practice of the Morgue in this case could easily be considered wilful and wanton misconduct." We note that by Dr. Donoghue's own admission, the process used to identify body 81—323 was flawed and mistakes occurred. The medicine vial found in decedent's pocket was lost by an unknown person sometime after the body was first brought in and placed on the floor of the morgue; the police report on which body 81—323 was tentatively identified as "Donald Koelleck" was not requested to aid in identifying the victims; fingerprints were not taken from the body; David Koeller was named as a building occupant on a tenant list provided to the medical examiner's office; and the postmortem dental X rays were incorrectly determined to match those of Lee Zimney.

However, it is also uncontroverted that decedent's body was one of approximately 19 others brought into the medical examiner's office within a matter of hours after the fire in the apartment building; that photographs and dental X rays were taken of the body; that, although later advised otherwise, the Koeller family was notified within two days of the possibility that a family member was one of the victims; that a security guard who viewed the body concluded that it was not that of Donald Koeller, the decedent's twin brother; that the name on the lost medicine vial was not the decedent's name;

that Dr. Donoghue did ask the Zimneys to bring in whatever identifying records they had of Lee Zimney; that there were some similarities between the dental X rays; and that the Zimneys affirmatively identified body 81—323 to be that of their relative, Lee Zimney, a belief held by Gail Zimney even after the misidentification was discovered.

 The facts adduced in this case provide no reasonable support for a finding that the County's conduct in the midst of its response to a mass tragedy was so outrageous or extreme as to go beyond all possible bounds of decency, or that the County knew there was a high probability that emotional distress would occur as a result of the acts and omissions of its employees, but that the actors nevertheless proceeded in conscious disregard of that probability. Indeed, the allegations directed against the County in count I of plaintiff's complaint alleging reckless and wilful and wanton conduct are verbatim restatements of those in counts II and III alleging negligence by the County and Dr. Donoghue. Merely inserting the words "reckless" and "wilful and wanton" in place of "careless" and "negligent" without supporting factual allegations is not sufficient to state a cause of action for reckless infliction of emotional distress. (*Cf. Neuberg v. Michael Reese Hospital & Medical Center* (1978), 60 Ill. App. 3d 679, 377 N.E.2d 215 (allegations of reckless and wilful and wanton misconduct in a complaint filed by the parents of two boys who developed cancer several years after being treated with radiation before such treatment was linked with thyroid cancer without allegations that defendants committed the acts with the intent to inflict severe emotional distress or that they knew that severe emotional distress was certain or substantially certain to result were insufficient, and failed to state a cause of action for the infliction of emotional distress).) In summary, we conclude that plaintiff has failed to state a cause of action for reckless or wilful and wanton infliction of emotional distress and that the trial court correctly, albeit for other reasons, ruled in favor of defendants and dismissed plaintiff's complaint.

For the reasons stated, the order dismissing plaintiff's complaint is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.