2023 IL App (1st) 211386

No. 1-21-1386

Opinion filed May 19, 2023

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| YOVANY I. LOPEZ COLUNGA, Individually and as Father and Next of Friend of Joshua Jair Lopez, and as Independent Administrator of the Estate of Yovanny Jadiel Lopez, Deceased, | ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | No. 20-L-6550 |
| v. | ) ) ) | Honorable Kathy M. Flanagan, Judge presiding. |
| ADVOCATE HEALTH AND HOSPITALS CORPORATION, d/b/a/ Advocate Christ Medical Center; ADVOCATE HEALTH AND HOSPITALS CORPORATION, d/b/a Advocate Medical Group; APRIL D. JONES, D.O.; RENAISSANCE MEDICAL GROUP, S.C.; RUKMINI VELAMATI, M.D.; THOMAS MURRAY, D.O.; STACEE LEWIS, M.D.; ALEXANDRIA VAN OYEN, D.O.; PATRICK LLOYD, D.O.; MICHELLE JOHNSON; HUMERA ASEM, M.D.; JOANNA IZEWSKI, M.D.; THERESE KIRSCH, M.D.; DENISE TAITANO-RITTER, M.D.; VALERIE SWIATKOWSKI, M.D.; CLARISA FIGUEROA; DESIREE FIGUEROA; and PIOTR BOBAK, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Advocate Health and Hospitals Corporation, d/b/a Advocate Christ Medical Center; Advocate Health and Hospitals Corporation, d/b/a Advocate Medical Group; April D. Jones, D.O.; Renaissance Medical Group, S.C.; Rukmini Velamati, M.D.; Stacee Lewis, M.D.; Patrick Lloyd, D.O.; Alexandria Van Oyen, D.O., and Thomas Murray, D.O., Defendants-Appellees). | ) ) ) ) ) ) ) ) ) ) | |

JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justices Lyle and Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1 This is an interlocutory appeal in a tort action in which plaintiff Yovany I. Lopez Colunga alleged 30 counts of intentional infliction of emotional distress against defendants Advocate Health and Hospitals Corporation and various physicians. In ruling on defendants' motion to dismiss, pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2020)), the circuit court concluded that plaintiff's claims were legally insufficient but, on its own motion, certified the following two questions for our review:

(1) Can a cause of action for intentional infliction of emotional distress be stated against a defendant, allegedly engaging in the outrageous conduct toward a plaintiff who is unknown to the defendant and who is not present at the time of the purportedly outrageous conduct; and

(2) Can a cause of action for intentional infliction of emotional distress be stated based on purported failures to perform certain acts (*i.e.*, non-feasance) versus intentional, active performance of certain acts (*i.e.* malfeasance)?

We allowed leave to appeal. See Ill. S. Ct. R. 308(a) (eff. Oct. 1, 2019). We review certified questions of law *de novo*. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 57-58 (2007). For the reasons explained below, we answer the first certified question, "No," and deem the second certified question moot.

¶ 2 Our review under Rule 308 is limited to answering the legal questions certified. *Apollo Real Estate Investment Fund, IV, L.P. v. Gelber*, 398 Ill. App. 3d 773, 778 (2009). We are *not* reviewing the circuit court's dismissal order, and our jurisdiction under Rule 308 is limited to

answering the questions as drafted. *Id.* ("Our review is strictly limited to the certified questions presented; we do not render any opinion on the propriety of any underlying rulings of the trial court."); see also *In re Estate of Luccio*, 2012 IL App (1st) 121153, ¶ 17 ("[T]he rule was not intended to be a mechanism for expedited review of an order that merely applies the law to the facts of a particular case."). Nevertheless, in analyzing the questions presented, it is helpful to have some understanding of the procedural background.

¶ 3    The crime underlying this case is of unspeakable horror: Clarisa Figueroa lured a young expectant mother to her home on the pretense of selling her baby clothes and, instead, murdered the mother, cut her unborn son from her womb, and claimed the baby as her own.

¶ 4    Figueroa called for emergency medical assistance, reporting that she had given birth unexpectedly at home. When the baby arrived at Advocate Christ Medical Center, he was not breathing. Doctors resuscitated him and admitted him into the neonatal intensive care unit. The hospital discharged Figueroa from the labor and delivery unit after three days. She continued to make medical decisions on the baby's behalf for two weeks, until Chicago Police detectives questioned the medical staff, prompting the baby's neonatologist to take protective custody. Genetic testing confirmed that Figueroa was not the baby's biological mother. Police subsequently arrested Figueroa for the murder of the baby's mother.

¶ 5    Upon learning of his newborn son's whereabouts, the baby's father, Yovany Lopez Colunga, assumed responsibility for decisions pertaining to the baby's medical care. The same doctors continued to care for the baby until his death one month later.

¶ 6    The baby's father is our plaintiff, and his complaint seeks damages based on intentional infliction of emotional distress against the medical providers who administered care to Figueroa

and the baby at Advocate Christ Medical Center. According to plaintiff, the medical providers consciously disregarded the substantial risk of causing him to suffer severe emotional distress when they permitted Figueroa to make medical decisions on the baby's behalf despite the information in Figueroa's medical records—including her age, lack of verifiable prenatal history, and prior tubal ligation—which should have indicated to the medical providers that she was physically unable to be the baby's biological mother.

¶ 7       The circuit court concluded that plaintiff had not stated viable claims for intentional infliction of emotional distress, reasoning that the baby's biological father was "unknown to Defendants at the time *** and that he was not present, either in a two-person or a three-person setting when the alleged outrageous conduct occurred." The circuit court further noted that defendants' alleged conduct involved "taking no action," which does not "constitute the type of intentional, overt, active conduct *** required to satisfy the elements of this tort."

¶ 8                              A. First Certified Question

¶ 9       Can a cause of action for intentional infliction of emotional distress be stated against a defendant who allegedly engaged in outrageous conduct toward a plaintiff who is unknown to the defendant and who is not present at the time of the purportedly outrageous conduct? To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege facts establishing that (1) the defendant's conduct was extreme and outrageous, (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that his conduct would cause emotional distress, and (3) the defendant's conduct in fact caused severe

emotional distress. *Doe v. Calumet City*, 161 Ill. 2d 374, 392 (1994); accord Restatement (Second) of Torts § 46(1) (1965).

¶ 10    To the extent that Illinois courts have analyzed issues related to the tort, Illinois law corresponds with section 46 of the Restatement (Second) of Torts. The Restatement divides the tort into "direct" claims and "third-party" claims. A direct claim is one where the plaintiff is the victim of the defendant's extreme and outrageous acts and the defendant directs those acts at the plaintiff. *E.g.*, *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 275 (2003). A third-party claim is one brought by a bystander, who witnesses the defendant's extreme and outrageous acts directed at another person. See Restatement (Second) of Torts § 46 cmt. *l* (1965).

> "(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
> > (a) to a member of such person's immediate family who is *present* at the time, whether or not such distress results in bodily harm, or
> >
> > (b) to any other person who is *present* at the time, if such distress results in bodily harm." (Emphases added.) Restatement (Second) of Torts § 46 (1965).

¶ 11    Almost from its inception, courts and commentators alike have recognized the need to impose strict limiting principles on this tort. See *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 88-

90 (1976). These limiting principles differ in direct claims versus third-party claims. Third-party claims may only be brought by a plaintiff who is present and who is either a family member *or* a non-family member who suffers bodily harm as a result of the tort. See, *e.g.*, *Green v. Chicago Tribune Co.*, 286 Ill. App. 3d 1, 13-14 (1996) (citing Restatement (Second) of Torts § 46(2) (1965)) (the plaintiff's intentional infliction of emotional distress claim failed where she "did not allege *** that she was present" when the defendant photographed her son undergoing medical treatment); Prosser and Keeton on the Law of Torts § 12, at 65 (W. Page Keeton *et al.* eds., 5th ed. 1984) ("Ordinarily recovery in such cases is limited to plaintiffs who are not only present at the time, but are known by the defendant to be present ***.").

¶ 12    The "presence" requirement reflected in our cases and the Restatement functions as one of those limiting principles, denying recovery on questionable claims lacking the indicia of intent and genuine emotional harm that a plaintiff's contemporaneous observance of the outrageous conduct guarantees. See, *e.g.*, *Green*, 286 Ill. App. 3d at 14; see also Prosser and Keeton on the Law of Torts § 12, at 65-66 (W. Page Keeton *et al.* eds., 5th ed. 1984). As the Restatement's drafters noted, "The limitation may be justified by the practical necessity of drawing the line somewhere, since the number of persons who may suffer emotional distress at the news of an assassination of the President is virtually unlimited ***." Restatement (Second) of Torts § 46 cmt. *l* (1965).[1]

---

[1]Courts outside of Illinois have occasionally relaxed the presence requirement for third-party claims brought against terrorists. See, *e.g.*, *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105 (D.D.C. 2005). The rationale underpinning these cases is that the defendants specifically intended to inflict fear and emotional distress on indirect victims through their outrageous acts. *Id.* at 115. Despite terrorists' broader aims, courts nonetheless limit the scope of potential plaintiffs to those expected to suffer most—namely, the victim's immediate family. See *Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 334 (D.C. Cir. 2003). No case has considered the viability of the terrorism exception under Illinois law, and it has no application to our certified questions.

¶ 13 Direct claims, in contrast, do not require "presence" under Illinois law. *E.g.*, *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 22 (1992) (the plaintiff stated claim for intentional infliction of emotional distress against radio hosts who "broadcast their derogatory remarks on the radio throughout the Chicago metropolitan area and outlying counties"); *Prakash v. Parulekar*, 2020 IL App (1st) 191819, ¶¶ 48-51 (allegations were sufficient to state direct claim against a professor who "intensely attacked" a colleague's professional integrity and career for a duration of five years in their shared academic and professional networks). To sufficiently plead a direct claim for intentional infliction of emotional distress, however, a plaintiff must allege specific facts showing that the defendant acted with intent. See *Tobolt v. Allstate Insurance Co.*, 75 Ill. App. 3d 57, 63 (1979) ("A mere statement that an act was done with a certain purpose or intent, without a statement of facts showing purpose or intent, is a conclusion of law."); see also *Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483, ¶ 27 ("A complaint alleging *** intentional infliction of emotional distress 'must be specific, and detailed beyond what is normally considered permissible in pleading a tort action.' " (Internal quotation marks omitted.) (quoting *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1999))); Gerald W. Boston *et al.*, Emotional Injuries: Law and Practice § 1:11, at 1-22 to 1-23 (1998) ("Because intent or recklessness is an essential element of the tort, recovery is denied where the plaintiff fails to offer sufficient evidence from which defendants [*sic*] culpable state of mind can be inferred.").

¶ 14 Recklessness can support a claim where a defendant knew that severe emotional distress is certain or substantially certain to result and acted in conscious disregard of that risk. *Kolegas*, 154 Ill. 2d at 24; *Public Finance Corp.*, 66 Ill. 2d at 90 (citing Restatement (Second) of Torts § 46 cmt. i (1965)). In *Rekosh v. Parks*, for example, a funeral home disregarded a substantial risk that

cremating a father's remains would cause extreme emotional distress to his children. 316 Ill. App. 3d 58, 65-67 (2000), *abrogated on other grounds by Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200. The funeral home's director *knew* that the father's ex-wife could not legally authorize the cremation and had also witnessed the ex-wife forge his son's signature. *Id.* at 65. The plaintiffs' allegations supported an inference that the funeral home was "aware that there was someone *** who therefore had a right and a duty with respect to the disposition of the body." *Id.* That the funeral home proceeded to cremate the body anyway was sufficiently extreme and outrageous conduct as against the funeral home, which was aware of the "high probability" that its conduct would cause severe emotional distress. *Id.* at 66-67.

¶ 15    In *Koeller v. Cook County*, 180 Ill. App. 3d 425, 436 (1989), in contrast, the plaintiff failed to allege that the defendant "*knew* there was a high probability that emotional distress would occur." (Emphasis added.) There, the plaintiff's brother was 1 of 20 people who perished in an apartment fire. *Id.* at 427. Based on dental X-rays and conflicting identification evidence, the medical examiner's office misidentified the body and informed the plaintiff's family that it did not belong to her brother. *Id.* at 427-28. The medical examiner's office discovered its mistake one year later, after finding that a name, closely resembling that of her brother, appeared on a prescription bottle found inside the decedent's pocket. *Id.* at 428. Although the plaintiff alleged several deficiencies in the identification process, the plaintiff's allegations provided no support for a finding that the medical examiner's office "proceeded in conscious disregard" of the probability that she would suffer emotional distress "as a result of the acts and omissions of its employees." *Id.* at 435-36.

¶ 16    As *Rekosh* and *Koeller* demonstrate, intentional infliction of emotional distress requires conduct undertaken with either purpose or recklessness, because it is the defendant's culpable state of mind from which a fact finder might infer that the conduct was "extreme and outrageous" as opposed to merely negligent. See, *e.g.*, *Giraldi v. Lamson*, 205 Ill. App. 3d 1025, 1029-30 (1990) (citing *Neuberg v. Michael Reese Hospital & Medical Center*, 60 Ill. App. 3d 679, 685 (1978)) (allegations that the defendants "carelessly and negligently failed to investigate *** do not allege that [the defendants'] acts were *intentional* or that the [defendants] knew that severe emotional distress was certain or substantially certain to result" (emphasis in original)); Bruce L. Ottley *et al.*, Illinois Tort Law § 3.02, at 3-5 (3d ed. 2010) ("If the defendant's state of mind is such that he or she only reasonably foresees or should foresee a risk of severe emotional distress, it falls below the minimum necessary for this tort."). Pleading recklessness requires facts showing that the defendant was *aware* of the high probability of causing emotional distress. See *Koeller*, 180 Ill. App. 3d at 436. It is the defendant's decision to engage in a course of conduct, despite the "high degree of probability" of causing the plaintiff's severe mental anguish, which renders it so outrageous in character, and to such an extreme degree, as to go beyond all possible bounds of decency. *Public Finance Corp.*, 66 Ill. 2d at 90 (citing Restatement (Second) of Torts § 46 cmt. d (1965)). Inherent to the requisite state of mind to commit intentional infliction of emotional distress is the defendant's knowledge of at least the person who is substantially certain to suffer emotional distress.

¶ 17    Accordingly, we answer the first certified question in the negative. A defendant can have no liability for intentional infliction of emotional distress to a plaintiff who is unknown *and* not present.

¶ 18                                  B. Second Certified Question

¶ 19     Can a cause of action for intentional infliction of emotional distress be stated based on purported failures to perform certain acts (*i.e.*, non-feasance) versus intentional, active performance of certain acts (*i.e.*, malfeasance)? In light of our answer to the first certified question, an answer to the second certified question is unnecessary and is rendered moot. See *Grundy v. Lincoln Park Zoo*, 2011 IL App (1st) 102686, ¶ 17 (Hoffman, J.) (answer to one certified question rendered another certified question moot); see also Ill. S. Ct. R. 308(c) (eff. Oct. 1, 2019) (interlocutory review of a certified question pursuant to Rule 308 is proper if it "may materially advance the termination of the litigation").

¶ 20     In summary, we answer the first certified question in the negative, and we deem the second certified question moot.

¶ 21     Certified question answered; cause remanded.

*Lopez Colunga v. Advocate Health & Hospitals Corp.*, **2023 IL App (1st) 211386**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-L-6550; the Hon. Kathy M. Flanagan, Judge, presiding. |
| **Attorneys for Appellant:** | Sean P. Driscoll, of Driscoll Law Group LLC, and Yvette Loizon, of Clifford Law Offices, P.C., both of Chicago, for appellant. |
| **Attorneys for Appellee:** | Krista R. Frick, of Cunningham, Meyer & Vedrine, P.C., of Chicago, for appellees Advocate Health and Hospitals Corporation, Rukmini Velamati, Stacee Lewis, Patrick Lloyd, Alexandria Van Oyen, and Thomas Murray. |
| | Aimee K. Lipkis and Melissa H. Dakich, of Cray Huber Horstman Heil & VanAusdal LLC, of Chicago, for other appellees. |